# O'MARA, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

## St. Louis Court of Appeals, November 3, 1903.

1. **Carrier of Passengers**: ELEMENTS OF CONTRACT OF CARRIAGE. The essential ingredients of a contract of carriage as a passenger on a street car are, that the person must signify his intention to take passage, either by words or conduct, and the carmen must assent by words or conduct to his becoming a passenger.

2. ———: ———: WHO IS A PASSENGER. It is not necessary to the status of a passenger that a person be actually on the car, and if the car is stopped or brought to a slow movement in obedience to a signal from a bystander that he wishes to take passage, this conduct is an invitation for him to get aboard, and when he starts to do so, he becomes a passenger and is entitled to be guarded from harm with high care.

3. ———: CONTRIBUTORY NEGLIGENCE: QUESTION FOR JURY. Whether one is negligent in attempting to board a moving

car, is a question for the jury, unless the movement of the car is so rapid that it would be manifest negligence to attempt to board it, or a person so infirm or incumbered by burdens as to make it negligent for him to attempt to board a moving car at a slow speed.

4. ———: INSTRUCTIONS AS TO DUTY NOT PLEADED. Where plaintiff alleged that the injuries were caused by starting the car too soon, it is not error to instruct the jury as to the duty of defendant to stop the car for a reasonable time so that plaintiff might get on safely.

5. **Appellate Practice:** WEIGHT OF EVIDENCE AGAINST VERDICT. Where there is substantial evidence in favor of plaintiff's cause, and there are no immutable facts of nature demonstrating that plaintiff's version is false, the judgment can not be reversed on account of the weight of evidence against him.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher*, Judge.

AFFIRMED.

*Boyle, Priest & Lehmann* and *George W. Easley* for appellant.

(1) The demurrer to the plaintiff's evidence should have been sustained. The great and overwhelming preponderance of the evidence was that the car was neither stopped nor slowed down for the purpose of enabling the plaintiff to board the car, but plaintiff tried the experiment of boarding a moving car, notwithstanding his age and the fact that the rear platform was crowded, and such experiment proved a failure. He should not be permitted to recover for his own mistake and negligence. Dietrich v. Railroad, 58 Md. 347; 3 Am. Neg. Cas. 627; Baltimore Traction Co. v. Ringgold, 78 Md. 409; 3 Am. Neg. Cas. 731. (2) The second instruction given for the plaintiff can not fairly have any place in an action of this character. Its only purpose was to mislead the jury and draw their attention from the real facts of the case, and it doubtless had its intended effect. The plaintiff was not suing for a failure to stop the car.

Why should there be an instruction as to the defendant's duty in that regard? Railroad v. Houston, 95 U. S. 703. (3) Instruction 1, asked by the defendant and refused, should have been given. It announced the doctrine that unless those in charge of the train had knowledge of the plaintiff's desire to enter the car, and stopped the car or slowed it up for that purpose, the relation of carrier and passenger did not exist. Booth Street Railway Law, p. 445, sec. 326; Schepers v. Railroad, 126 Mo. 665; 4 Am. Neg. Cas. 781; Schaefer v. Railroad, 128 Mo. 64; 4 Am. Neg. Cas. 803. (4) The verdict of the jury is contrary to the evidence, and is wholly unsupported by the evidence. Railroad v. Delcourt, 33 Ill. App. 430; 2 Am. Neg. Cas. 513.

*A. R. Taylor* for respondent.

GOODE, J.—Appeal from a judgment in favor of plaintiff in an action for personal injuries caused by a fall from the rear platform of one of defendant's street cars.

The statements in the petition are that plaintiff attempted to take passage on said car at the west crossing of Cass avenue and Seventh street in the city of St. Louis, a customary place for receiving passengers. Plaintiff signaled to the motorman and conductor of a west-bound car that was approaching the crossing, his intention to become a passenger, and thereupon the car's movement was slowed down, or stopped, to admit him. While it was motionless, or slowly moving, and while plaintiff was holding to a handrail and in the act of stepping on the car, but before he had reasonable time to get on, the motorman and conductor negligently caused and suffered it to be started forward with speed and force, whereby plaintiff was dragged, caused to fall and greatly injured.

The defenses are a general denial and plaintiff's own causative negligence in attempting to board the

car when it was rounding a curve at the usual speed and before it had reached its usual stopping place for the reception of passengers.

It appears that the railway track passes from Seventh street into Cass avenue on a curve; and, as said car was bound westward, its stopping place for passengers to board and leave it would be the west crossing of Cass avenue.

Plaintiff testified he stationed himself on that crossing and as the car approached, raised his hand to the motorman and told him that he (plaintiff) wished to get on the car, which was then about twenty-five feet away; that in obedience to his signal the car stopped still and he caught hold of the rear rail with his right hand and put one foot on the lower step; that thereupon the conductor rang the bell, the car gave a lurch, throwing the plaintiff against the side of it and he lost his balance; that the conductor grabbed him by the breast of his coat and tried to pull him on, but was unable to do so; the result being that he was dragged about fifty feet, when he fell on the granite street and was hurt. Plaintiff's testimony is that the car started as soon as he got his foot on the step.

W. J. Behm, a witness for the plaintiff, testified that the car did not stop but was moving slowly, and when the plaintiff attempted to get on was going at the rate of one and one-half or two miles an hour, but moved pretty lively after he got on; further, that cars always slow up in rounding a curve.

Frank Kennah swore he was on the rear platform of the car; that when plaintiff started to get on it was going slowly; could not say exactly how fast, but it came very near to a standstill while it was rounding the curve; that plaintiff got hold of the rail with his right hand and put one foot on the footboard; then the car was going a little quicker and a young man grabbed hold of plaintiff and tried to pull him on, but he had to let loose after the car had run about fifty feet. This

witness testified further that the conductor did not seize the plaintiff but was inside the car collecting fares at the time; that the man who did seize him, as we understand the testimony, was the witness Behm. Several passengers, as well as the motorman and conductor, testified that the car did not stop at the crossing and only slackened speed to the extent that was always done in passing around curves.

Three witnesses, who were driving by in a wagon at the time, swore plaintiff ran to the car and grabbed the rail as it was swinging around the curve at its usual speed, was dragged some distance and dropped to the street.

The motorman testified that he did not see the plaintiff nor his signal to stop; that as the car rounded the curve it was going three or four miles an hour, and after entering the curve increased its speed; that he had no knowledge of plaintiff's attempt to board the car until after he had stopped in obedience to the conductor's signal by the bell.

The conductor testified that he was inside the car as it passed the crossing and near the front end, collecting fares; that he knew nothing about plaintiff's presence until he saw him lying in the street after the car had stopped; that he did not know plaintiff wanted to get aboard or had made an attempt to do so, until after he was injured; that his (the conductor's) attention was attracted by a passenger on the rear platform who called out that a man was dragging, whereupon he rang for a stop.

Such, in substance, is the testimony; which we have fully digested, because we are urged to grant a new trial on the ground that the weight of the evidence was overwhelmingly against the verdict and showed conclusively that the car was neither stopped nor its speed abated for the plaintiff to get on, that he never became a passenger and that he was injured by his own recklessness in attempting to board the car while it was

running at a lively speed; particularly in view of the fact that he was a man about sixty-three years old.

The first question we will examine is, whether, accepting as true the version of plaintiff and his witnesses, he became a passenger on the car and entitled to the prerogatives of a passenger—that is, to the exercise by the carmen of that high degree of care exacted of carriers of passengers to prevent injury to them.

It will be seen from plaintiff's testimony that he was standing at the right place to take passage on street cars; that he not only beckoned to the motorman to stop, but told him he wanted to get on the car and that the motorman, in obedience to his gesture and call, stopped the car. The discrepancies between plaintiff's own account of the affair and that of the witness Kennah are as to whether the car came to a dead stop or continued in slow motion, and as to whether the conductor or another man tried to keep plaintiff from falling. Kennah further said that while cars usually slackened speed in going around a curve, they did not move as slowly as this car did that evening.

On the above testimony the trial court instructed the jury that if the plaintiff signaled to the motorman his intention to become a passenger, and if the jury found that, in obedience to such signal, the car slowed down in order to let the plaintiff get on as a passenger, and whilst he was doing so and before he had a reasonable opportunity to get safely on, the defendant's servants caused the car to start forward with increased speed, by which plaintiff was injured; and if the jury found the defendant's servants in charge of the car failed to exercise that high degree of care and skill, such as would be exercised by skillful railway employees under similar circumstances, in causing and stopping the movements of the car, plaintiff was entitled to recover.

The right of a person to carriage as a passenger on a street car rests on a contract, the essential ingredients

of which are that the person must signify his intention to take passage, either by words or conduct, and the carmen must assent, by words or conduct, to his becoming a passenger. Schepers v. Railway, 126 Mo. 665; Farley v. Railroad, 108 Fed. 14; Ill. Cent. Ry. v. O'Keefe, 168 Ill. 115.

It is not necessary to the status of passenger that a person be actually on a car; but he is entitled to the privileges of that status while attempting to get on, if the car has been stopped by those in charge for the purpose of receiving him, or any one desiring to take passage.    Booth, Railway Companies, sec. 326; Schepers v. Railway, supra; Murphy v. Railroad, 45 Mo. App. 342; Cleveland v. N. J. Steamboat Co., 68 N. Y. 306; Smith v. Railroad, 36 Minn. 1. Nor is it absolutely essential that the car should be standing still when a person attempts to board it, in order for him to acquire the rights of a passenger. If carmen, instead of stopping their car, bring it to a slow movement at a crossing where passengers are received, in obedience to a signal from a bystander that he wishes to take passage, their conduct is an invitation to him to get aboard, and when he starts to do so he becomes a passenger and entitled to be guarded from harm with high care.

In view of the evidence to support it, we can find no fault in the instruction given by the court as to what facts the jury must believe the evidence established in order to find the plaintiff was a passenger and entitled to the care which common carriers must take of passengers. Indeed, the defendant's instructions, both those given and the one refused, adopted the same theory as the plaintiff's in this respect. The defendant, as well as the plaintiff, presented instructions which made the question of whether plaintiff was a passenger or not turn on whether he gave a signal that he wanted to become one, which signal was observed by the motorman and assented to by stopping or slowing the car to receive plaintiff; and we think that was an

accurate way to declare the law on the facts of this case.

The question of a party's contributory negligence in acting on an invitation like the plaintiff says he had, to get on a going car, arises for consideration; and the circumstances may be such that a court would be justified in declaring he was guilty of contributory negligence as a matter of law. The movement of the car may be so rapid that it would be manifest negligence to endeavor to board it; or a person may be so infirm and incumbered by burdens as to make it negligence for him to attempt to board a car moving at a slow speed. Traction Co. v. Ringgold, 78 Md. 409. But the issue of alleged contributory negligence on the part of a person hurt while trying to get on a car in motion, is mostly a jury issue; and it was declared in Schepers v. Railroad, supra, that it can not usually be said as a matter of law, that a person making such an attempt is guilty of negligence, even if the car is moving at a speed of three or four miles an hour. Such an attempt is evidence of negligence which the jury must weigh. The question of plaintiff's contributory negligence stands entirely apart from the question of whether he was a passenger when he was hurt, and is to be ascertained from other facts. Whether he was a passenger depends, in the circumstances of this case, on a finding that he made known to the motorman his desire to become one and the motorman's response to his signal, and acceptance of him as such, by stopping or slowing the car to receive him. The plaintiff's alleged contributory negligence depends on whether, all the circumstances considered, a man of ordinary prudence, of his years, would have attempted to get on the car; and was properly submitted to the jury in that light.

Complaint is made of an instruction given for the plaintiff that if the jury found plaintiff was at the usual place for receiving passengers and signaled to

the motorman, who saw his signal and slowed the car for plaintiff to get on, then it was the duty of the motorman to stop the car for a reasonable time so that plaintiff might get on safely. The soundness of that instruction as an abstract statement of the law, we do not understand to be challenged. What is challenged is its appropriateness in this case; and this on the ground that plaintiff did not sue for a failure to stop the car, but for starting it too soon. It was undoubtedly the duty of defendant's servants, if they heard the plaintiff, to stop the car and hold it still until the plaintiff got aboard; and whether it was actually at a standstill when he attempted to get on, or was slowly moving, the duty to stop was none the less obligatory. Omitting to stop a street car a reasonable time to enable a person to get aboard, whose signal has been heeded by reducing speed to receive him, is surely a breach of duty; and there can be no harm in telling the jury so in an action for personal injuries alleged to be due to a breach of that obligation.

A vehement appeal is made for the reversal of this judgment on account of the overwhelming weight of the evidence against the verdict. Counsel say this court can not attempt to shield itself behind the rulings of the trial court and refuse to review that court's action. This is true and will not be gainsaid; nor are we conscious of a desire to evade any duty which may be incumbent on us in respect to reviewing or reversing the rulings of the trial court; but, as a court of review and not of trial, we must keep inside the limits which the Constitution and the law prescribe for us, and can not arbitrarily go beyond them to achieve what we deem a just result in the particular case. We are far from being satisfied with some verdicts which, because supported by substantial evidence, we have to let stand. This verdict is thus supported. The plaintiff's testimony supports it and so does Kennah's and Behm's. True, there are more witnesses who describe the acci-

dent differently and in a way which shows the plaintiff was to blame; but there are no immutable facts of nature which demonstrate unmistakably that plaintiff's version is false; and how are we to say evidence is lacking to uphold a jury's decision? To do so would, undoubtedly, be weighing the testimony and a usurpation of authority by us. Setting aside verdicts because they are against the weight of the evidence is within the discretion of the trial court, as has been ruled in countless decisions; and an appellate court has no right to interfere with that discretion unless convinced that it was abused; which we understand to mean that the trial court must have refused to set aside a verdict rendered on no evidence of weight or substance and showing that the jury did not decide from the evidence but from sentiment or partisan motives. Blanton v. Dold, 109 Mo. 64; Gannon v. Gas Light Co., 145 Mo. 502; State v. Jacobs, 152 Mo. 565; Whitsett v. Ransom, 79 Mo. 258; Lawson v. Railroad, 131 Mo. 533; Taylor v. Railroad, 162 Mo. 183. This rule is based on the notion that juries and trial judges are apt to weigh evidence accurately because witnesses are under their observation when testifying.

The record in this case, as in many others where the action is for personal injuries, is stained and disfigured by testimony so conflicting that it is hard to see how all the witnesses could have told an honest story; but there was certainly considerable substantial testimony in favor of the plaintiff's cause, although the witnesses against it were more numerous. This made an issue of fact for the jury, subject to the revisory power of the trial judge.

The judgment is affirmed. *Bland, P. J.,* and *Reyburn, J.,* concur.