ANDERSON, Appellant, v. THE CHICAGO, ROCK
ISLAND & PACIFIC RAILWAY COMPANY et
al., Respondents.

### St. Louis Court of Appeals, February 4, 1908.

**FORCIBLE ENTRY AND DETAINER: Possession.** A lessor, hav-
ing declared the lease forfeited in accordance with a stipulation
contained therein, notified the lessee and took possession of the
premises, and afterwards the lessee, on finding the owner absent
and the door open, fastened the door and posted up a notice that
he had taken possession, this was not such possession as to en-
title him to maintain an action of forcible entry and detainer.

Appeal from St. Louis City Circuit Court.—*Hon. James*
*E. Withrow,* Judge.

AFFIRMED.

*Barclay & Fauntleroy* and *R. B. Haughton* for ap-
pellant.

(1)    It is immaterial whether or not the lease
to complainant was cancelled.    The question is as to
possession—not as to right of possession.    King's ad.
v. Gaslight Co., 34 Mo. 38; Van Stewart v. Miles, 105
Mo. App. 248; Harris v. Turner, 46 Mo. 439; Beeler v.
Cardwell, 29 Mo. 74; Redman v. Perkins, 98 S. W. 1097;
Meriweather v. Howe, 48 Mo. App. 156; Bell v. Cowan,
34 Mo. 254; Miller v. Tillmann, 61 Mo. 317; Spaulding
v. Mayhall, 27 Mo. 379; Rosenberger v. Railroad, 96 Mo.
App. 508; Tolbert v. Hendricks, 77 Mo. App. 276; Craig
v. Donnelly, 28 Mo. App. 351; St. Louis Assn. v. Rein-

ecke, 21 Mo. App. 481; Balch v. Myers, 65 Mo. App. 426; R. S. 1899, sec. 3334; R. S. 1899, sec. 3343. (2) The complainant is entitled to recover on showing possession. Such possession as was shown is sufficient. Redman v. Perkins, 98 S. W. 1097; Bartlett v. Draper, 23 Mo. 409; Sitton v. Sapp, 62 Mo. App. 201; Spalding v. Mayhall, 27 Mo. 380; Prewitt v. Burnett, 46 Mo. 373; Rochester v. Mining Co., 86 Mo. App. 451; Warren v. Ritter, 11 Mo. 356; McCartney's Ad. v. Alderson, 45 Mo. 39; School District v. Holmes, 53 Mo. App. 487; Hoffstetter v. Blattner, 8 Mo. 281.

*Marion C. Early* for respondents.

(1) Lessor reserved the right to cancel the lease upon thirty days' notice, which notice was given. Upon cancellation, he was to pay lessee one thousand dollars. Complainant demanded payment of $1,000, and thereby acknowledged the sufficiency of the notice and right of cancellation, if indeed he could be at all regarded as a lessee. His action amounted to an election upon his part to look to the lessor for the payment of $1,000, and he could not thereafter assert any other rights under the lease. Bank v. Madden, 94 Mo. App. 596; Curtis v. Moore, 162 Mo. 442. (2) It conclusively appears from the evidence that the possession sought to be established by appellant and on which his action is based, if not a trespass, was a bare occupancy—a mere constructive possession, not for the purpose of putting the land to any beneficial use, but to gain advantage in contemplated litigation. It was not bona fide, at most a mere sham and wholly insufficient to support an action of forcible entry and detainer. Chinowith v. Mining Co., 74 Mo. 173; DeGraw v. Prior, 68 Mo. 158; Greenleaf v. Weakley, 39 Mo. App. 191; Nelson v. Nelson, 30 Mo. App. 184; Kennedy v. Broyles, 55 Mo. App. 257, 261; Keen v. Schweigler, 70 Mo. App. 408; Bowers v. Cherokee Bob, 45 Cal. 495; Haley v. Palmer, 9 Dana (Ky.) 320.

STATEMENT.—The action is for forcible entry and detainer of premises situated on lot 5, block 9, Ashley Addition to the city of St.Louis, described as No. 1210 N. Third street and fifty feet in the rear of Nos. 1212 and 1214 N. Third street, on which there was a stable. The suit was commenced in a justice's court but was removed to the circuit court on a writ of *certiorari,* where it was tried by a jury. At the close of all the evidence in the case, the court peremptorily instructed the jury to find for defendants. A motion for new trial proving of no avail, plaintiff appealed. The facts are that on June 20, 1903, the Sun Realty Company, a corporation and owner of the premises, executed and delivered to plaintiff a lease of the premises for five years, at a rental of $840 per annum, payable in installments of $70 per month in advance. Following are the provisions of the lease bearing upon the issues in the case:

"Default in payment of any monthly rent installment for ten days after it becomes due shall operate as a forfeiture of lease if so determined by lessor, lessee will not assign, sublet, or allow any other tenant to come in with, or under him without previous written consent of lessor, lessee shall keep premises clean and remove all ashes, dirt, filth and rubbish, shall pay water rates for leased premises during term of lease, make repairs on inside necessary to keep in good condition, or pay for same, any violation by lessee, or those under him of any covenant or agreement in lease shall operate as forfeiture of lease if so determined by lessor by notice in writing served upon lessee by delivering to him a copy or by posting a copy upon some conspicuous portion of leased premises, lessor to have the privilege of terminating lease at any time during term upon payment to the lessee of $1,000, first having given lessee thirty days' notice of lessor's intentions so to do, in those

events lease to be void and of no effect and lessee will then surrender possession, at end or other termination of lease."

The lease was duly acknowledged and was recorded July 19, 1904, in the recorder's office in the city of St. Louis. The first floor of the building was a store room and at the time the lease was executed, plaintiff was connected with the Coca-Cola Company, a corporation, which company, by consent of the owner, occupied the premises over a year and paid the rent to the lessor. After said company moved from the premises, they were occupied by Thomas Whalen, who for a time paid the rent to the Coca-Cola Company, but later, by direction of the company, paid the rent direct to the owner. On January 16, 1906, the owner gave Whalen notice to quit the premises in thirty days. Whalen moved out on February 15, 1906, and, through his son, delivered the keys of the storeroom to the owner. In the same month, the Sun Realty Company, the owner, sold and transferred the premises to the defendant railroad companies. These companies employed a wrecking company to wreck this and a number of other buildings in the same block, for the purpose of erecting a freight warehouse on the ground. The wrecking company, on March 9, 1906, took a portion of the roof and some of the roof joists off the stable, and on March twentieth commenced to wreck the store building and in a few days thereafter had it down and the material removed.

Plaintiff moved to Atlanta, Georgia, in the year 1904, and went into business there and has since made that city his home. Whalen went into possession of the premises, as he testified, as a subtenant of plaintiff and paid the rent for a time to the Coca-Cola Company, as a representative of the plaintiff. Later he paid the rent directly to the owner, by direction of the Coca-Cola Company. The owner treated Whalen as a tenant from month to month. Whalen testified that he mailed the

notice to quit to plaintiff.      Plaintiff employed R. B.
Haughton, Esq., in the early part of March, 1906, to
look after his interests in the property.      In his let-
ters to Haughton, plaintiff referred to the clause in the
lease, providing that if the lessor should dispose of the
property within the life of the lease, said lessor would
pay the lessee $1,000, the latter to surrender possession.
On March 6, 1906, plaintiff wrote Haughton the follow-
ing letter:

"Atlanta, Ga., March 6, 1906.
"Mr. R. B. Haughton,
      "St. Louis, Mo.
      "Dear Sir:      Replying to yours 26th inst. relative
to my claim against Sun Realty Company.      I here-
with inclose my check of $25 retainers fee.

      "At no time since I signed lease have I personally
did business on the premises.      The lessors would not
take the Coca-Cola Company but insisted on my sign-
ing the lease personally, so I argue if they permit me
to subrent to Coca-Cola Company, I could sublet to any
one I pleased.

      "Will write more fully at a later date so go ahead
and use your own judgment.

"Respectfully Yours,
      "T. J. ANDERSON."

On the tenth of the same month Haughton, acting
for plaintiff, went to the premises and found them un-
occupied and the door unlocked.      He testified he picked
up a piece of wire, passed it through the door and around
the casing and twisted it, and posted the following no-
tice on the front door of No. 1210.      "These premises,
first floor and basement 1210 N. Third and fifty feet
off the rear end of 1212 and 1214 N. Third street are
in my possession, as agent of Thomas J. Anderson under
a duly recorded lease," signed R. B. Haughton.      After
posting the notice, Haughton employed Fred W. Gerike
to watch the premises.      On March eleventh Gerike went

to the premises, got a chain and padlock, passed the chain through the door and around the casing and locked it with the padlock, and posted on the front and rear doors of the building the following notice:

"St. Louis, Mo., March 10, 1906.

*"To Whom it May Concern*:

"This is to advise all persons that Fred W. Gerike is in possession of the first floor and the basement of 1210 N. Third street and fifty feet in rear part of Nos. 1212 and 1214 N. Third street, on which is a stable, etc., in this city, as the agent of T. J. Anderson, lessee, under a duly recorded lease and they are warned not to trespass in any way upon the same.

"R. B. HAUGHTON,

"Agent and attorney for said Anderson."

Gerike hung about the premises in the daytime and kept something of a watch over them until the morning of March twentieth, the day the wrecking company begun to wreck the house (No. 1210 N. Third street).

William H. Redemeyer, president of the Sun Realty Company, testified that the Coca-Cola Company continued in the premises after plaintiff left for Atlanta; that on his departure plaintiff told him to send the rent bills to the Coca-Cola Company; that the Coca-Cola Company continued in possession for about a year and then notified him not to send any more rent bills to it, that plaintiff had no more to do with it and to collect the rent from some one else; that he then asked Whalen to take possession; that plaintiff and the Coca-Cola people were delinquent for two months rent during July and August, 1904, and on January 16, 1906, he mailed plaintiff the following notice:

"St. Louis, Mo., Jan. 16, 1906.

"*To Thomas J. Anderson*:

"Notice is hereby given that the lease heretofore made with you for the premises No. 1210 North Third street and rear of 1212 and 1214 North Third Street has because of your non-payment of rent and the violation of the covenants contained in said lease become null and void, causing a forfeiture of all rights therein reserved to you as lessee.

"Sun Realty Company,

by William H. Redemeyer, Pres."

The evidence shows that plaintiff received the notice.

Defendants' evidence tends to show the wrecking company had men guarding the premises day and night from the date defendants acquired title from the Sun Realty Company until the premises were wrecked and the material removed.

In rebuttal John Haley testified that on March sixth, the day the wrecking company commenced to tear the roof off the stable, there was a wagon, feed boxes, curry comb and brushes in the stable, and that he had taken a team out of the stable early in the morning of that day.    He did not testify how, or under what arrangement, or by whose authority, the property was in the stable.

BLAND, P. J. (after stating the facts.)—The uncontradicted evidence is that neither plaintiff or any one for him was in actual possession of the premises from the time they were vacated by Whalen, prior to March 10, 1906.    The evidence shows that Whalen vacated the premises on February 15, 1906, and surrendered possession to the owner who, in the same month, deeded the premises to the defendant companies.    Defendants at the time had employed a wrecking company to wreck the buildings on their depot site, including the buildings on the premises in question.

The evidence shows this company took possession of the premises and kept men on duty day and night guarding them.    The lease provided that for the non-payment of rent the owner might declare the lease forfeited.    Under this stipulation the owner declared the lease forfeited and notified plaintiff of that fact, so that not only was plaintiff's right to possession denied, but possession adverse to his claim was also acquired by the owner, which adverse possession, according to the evidence, was transmitted to defendants.    In these circumstances, plaintiff did not gain actual possession of the premises by the acts done by Haughton and Gerike in his name and as his agents.    An owner in actual possession of his house cannot be deprived of that possession by an adverse claimant, who, finding the owner absent and the door open, merely closes and fastens the door and posts a notice that he has taken possession; if such were the law then the retention of possession of real property would be put to hazard every time the owner might be temporarily absent, and his bodily possession would be indispensable to maintain and secure the possession of his premises against an adverse claimant.    As plaintiff was not in the actual possession of the premises, he cannot maintain this action.    [Armstrong v. Hendrick, 67 Mo. 1. c. 543; O'Mara v. St. Louis Transit Co., 102 Mo. App. 1. c. 208, 76 S. W. 680.]

The judgment is affirmed.    All concur.