Syllabus.

## Wytheville.

## VIRGINIA RAILWAY AND POWER COMPANY V. ARNOLD.

### June 14, 1917.

### Absent, Burks, J.*

1. STREET RAILWAYS—*Contract of Carriage—Relationship of Passenger and Carrier—Implied Contract.*—The relation of passenger and carrier is one of contract. It differs, however, from a contract in the ordinary relations of parties to each other, in that it is a contract which a common carrier is not at liberty to decline to make, where the would-be passenger has brought himself within the requirements entitling him to ask of it the service of carriage and he does in fact ask it. The law in such case imposes the duty upon the carrier to render the service, and, under proper circumstances, the law will imply the existence of a contract of carriage.

2. STREET RAILWAYS—*Contract of Carriage—Relationship of Passenger and Carrier—Meeting of Minds.*—The conscious acceptance by the motorman or conductor of a car of the offer of a would-be passenger to become a passenger—*i. e.*, the actual meeting of minds of passenger and carrier in fact upon a contract of carriage—is not essential to the relationship of carrier and passenger.

3. STREET RAILWAYS—*Relationship of Passenger and Carrier—Implied Contract.*—The act of a carrier in stopping a street car, or in bringing it almost to a stop at a place where it is accustomed to receive or discharge passengers, is an implied invitation by the carrier to a would-be passenger to get aboard, regardless of the motive or mental attitude of the employee controlling the movement of the car, and an acceptance by a would-be passenger of this implied invitation, creates the relationship of carrier and passenger. The law under such circumstances implies the contract of carriage.

4. STREET RAILWAYS—*Relationship of Passenger and Carrier—Implied Contract.*—In a case where the servant of the defendant in charge of the movement of the car does not in fact see the intending passenger, and is not in fact aware that he wishes

---

*Case submitted before Judge Burks took his seat.

to become a passenger, the situation must be such that in the exercise of ordinary care in the discharge of its duty as a common carrier the defendant through such employee ought to have seen him or have been aware that he wished to become a passenger, before the law will imply the contract of carriage.

5.  STREET RAILWAYS—*Contributory Negligence—Boarding or Alighting from Moving Street Car—Proximate Cause.*—It is not negligence *per se* to alight from a slowly moving street car. The same legal rule applies to the boarding of a slowly moving street car. In both cases the act of a person injured by the attempt to alight from or board a moving car would be the immediate cause of the injury. But the general doctrine of the law of negligence is that where a cause which results in injury to a person is set in motion by another, that other will be liable to the person injured, although the intervening act or omission of such person was the immediate cause of his receiving the injury, provided the circumstances surrounding him are such that his act or omission ought not to be imputed to him as a fault, *i. e.*, where the latter act or omission occurs in the exercise of ordinary care by the person injured. That is to say, the general doctrine of the law of negligence is, that the act or omission of the person injured, if it occurs in the exercise of ordinary care on the part of the latter, cannot be regarded as the proximate cause of the injury. Certainly this doctrine is applicable to the conduct of passengers boarding or alighting from slowly moving street railway cars under the rule above mentioned. Under it, where the car being in motion is due to the negligence of another and contact with it causes the injury, the question of fact is, whether the act of the person injured, in attempting to board a slowly moving car, was one of ordinary care. If so, such act cannot be considered as the proximate cause of the injury.

Error to a judgment of the Law and Equity Court of the city of Richmond, in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

STATEMENT OF THE CASE AND FACTS BY SIMS, J.

The plaintiff in error was the defendant in the court below and will be hereinafter referred to as "defendant." The defendant in error was the plaintiff in the court below and will be hereinafter referred to as "plaintiff."

This case is one of personal injury of the plaintiff occasioned while he was in the act of boarding a street car—either moving or moving the instant after plaintiff caught hold of and placed one foot on its step.

There was a verdict and judgment for the plaintiff in the court below. There were certain exceptions then taken by the defendant to the action of the court with respect to instructions and a motion to set aside the verdict as contrary to the law and the evidence.

We must therefore ascertain the facts in the case as if it were before us upon demurrer to the evidence by the defendant. So regarding the evidence the material facts are as follows:

THE FACTS.

The accident occurred on Venable or Q street, where there are two street railway car tracks. Owing to the narrow width of the street, there is not a great deal of room between a passing car and a horse and vehicle which may be standing on the side of the street. About 8 o'clock of the morning of the accident there was a wagon drawn by one horse standing on the north side of said street, the horse facing west, its head being on the "near side" of Twenty-sixth street, to a car going west, about the usual distance from the northeast corner of Venable and Twenty-sixth streets, where passengers for west-bound street cars of defendant were accustomed to get aboard—the rear of the wagon being somewhat east of such usual place for

passengers to board such cars. As the wagon stood it would have been "pretty near" any west-bound passing car.

The car of defendant, from which the plaintiff received his injuries, was west-bound—a pay-as-you-enter car—with its entrance at the rear.

At the time mentioned the plaintiff was walking on the north side of Venable street from the corner of Twenty-fifth street and Venable towards Twenty-sixth street corner, expecting to board the first car going west. As, walking along the sidewalk, he approached the northeast corner of Twenty-sixth street, he saw a car running at a "pretty good" speed coming west, when it was about Thirtieth street, that is, about four blocks away. Plaintiff thereupon walked out in the street to the rear of the wagon—looked at the distance the car was from him—concluded that the car would likely fail to stop with its entrance sufficiently east of the wagon to permit him to board it and as the wagon was pretty close to the car track, he decided that he had better get on the west side of the wagon. He thereupon walked on to the west bound car track past the wagon and horse, to the horse's head and stood there "out near the track." The car was then about Twenty-ninth street, about three blocks away. What immediately occurred thereafter was, in the language of the plaintiff, as follows:

"When the car got very near half way of the square, I had a lunch in my hand wrapped in newspaper, and I waved to the motorman like that (indicating). He was looking straight at me. I waved him to stop the car, and the car came up very slowly, ran past the wagon, and, as it got to me, it practically stopped. I reached out with my hand and got one foot and one hand on the car, and, just as I did, the car gave a very sudden and violent lurch forward. My foot that was on the step slipped back off again, and I was dragged that way. I heard the conductor give one bell, but the car continued to speed up and ran faster,

and, after it passed on the west side of Twenty-sixth street on Q, I felt my leg give a snap or pop where it was doubled underneath the car.  The conductor then, when I got very near half way of the square, put his hand on me.  He said, 'Brother, do you want to get on this car?'  I said, 'No, brother, I want to get off.  You have crippled me up; stop the car and let me get off.'  He ran down to within one car length of Twenty-fifth street, Johnson's box factory, so the middle part of the car was even with the door of Johnson's box factory.  They carried me in diagonally to the box factory and phoned for the ambulance.  That, gentlemen, is a true story, so help me God, so far as I know."

Q. Where did you wave to the motorman?

A. Didn't wave to him until he got half way of the block. I waved with my lunch.

Q. How did you wave?

A. Just like that, the ordinary way (indicating).

Q. Did the car begin to slow down apparently in response to your wave?

A. Yes, sir, started to slow down.

Q. Did it continue to slow down until the time you caught hold of the dividing rod?

A. Yes, sir.

Q. Did the car come to a stop or was it still running when you stepped onto it?

A. It came to a stop as near as I can remember, Mr. Cabell.  I will not swear it came to a dead stop, but it came practically to a stop as a car with no ladies to get on generally comes to a stop for a man to get on, and I thought in the next two or three feet it would come to a stop.  I think it came to a stop, but, if it was moving at all, it was not any more than a snail could go.

Q. Did you get your feet on the step?

A. Yes, sir.

There is a conflict in the testimony as to the manner in which the plaintiff gave the stop signal. The motorman on the car—a witness for defendant—testified that, from the time that his car was one block away from him until it passed plaintiff, he saw the latter, standing at the horse's head—thought plaintiff was the driver of the wagon and not a would-be passenger—did not see plaintiff make any stop signal—that as the car drew near the wagon witness slowed it down because he was in doubt whether it could pass the wagon without colliding with it—that plaintiff stooped and looked to see if the car could pass the wagon as the car came near the wagon, "going very slow," and at this time plaintiff motioned with one hand, indicating that the car could "come on," and witness heard the plaintiff say "come on"; that thereupon witness himself also seeing that the car could pass the wagon, fed his current up the usual way, a point at a time, gradually increasing the speed of the car; that two or three points would have caused the car "to snatch or jerk" which it did not do.

Plaintiff testified that he did not stoop, or look to see if the car could pass the wagon, and that he made no motion with his hand, or signal, indicating that the car could "come on," nor say "come on"; that the only signal he made was the stop signal aforesaid.

As to the speed of the car when the plaintiff attempted to get aboard of it, the testimony is conflicting.

The testimony of the plaintiff is noted above. That of his other witnesses on this point is to the effect that the car had stopped, or practically so, when he took hold of it and placed one foot on its entrance step. The testimony for defendant is that it was moving at the rate of five or six miles an hour at that time.

27

## SUMMARY OF THE FACTS.

Regarding the evidence under the rule above referred to, the facts bearing on the questions presented to us for our decision, may be summarized as follows:

1. There was in fact no express contract of carriage of plaintiff as a passenger.

2. As bearing on whether there was such an implied contract the facts are as follows:

The plaintiff at the proper place, gave the proper signal, indicating his desire to become a passenger, and so gave the signal that it was negligence on the part of defendant not to have seen it (through its motorman). The defendant, nevertheless, did not see the signal. However, for another cause, it slowed down its car immediately following the signal in a manner which induced the plaintiff reasonably to conclude that it was going to stop in response to his signal, and he did so conclude, and acted upon that conclusion, in his attempt to board the car.

3. The car was decreasing in its motion and had come practically to a stand-still at the moment plaintiff attempted to board it.

*A. B. Guigon, H. W. Anderson, Thos. P. Bryan* and *T. Justin Moore,* for the plaintiff in error.

*Cabell, Garnett & Cabell,* for the defendant in error.

SIMS, J., after making the foregoing statement, delivered the opinion of the court.

There are only two questions raised by the assignment of error and presented to us for decision, namely:

1. Whether a meeting of the minds of defendant and plaintiff *in fact* upon a contract of carriage of the plaintiff as a passenger is essential to the recovery of the plaintiff?

2. Whether the plaintiff is entitled to recover any damages—although the defendant was negligent in not bringing its car to a stand-still—and although it was moving so slowly that the plaintiff was guilty of no negligence in attempting to board it, if the plaintiff in fact attempted to board the car while it was moving, his own act, in coming in contact with the moving car, being the proximate cause of his injury (as defendant contends)?

As these questions involve well-settled propositions of law, we do not feel that any extended discussion of the authorities is necessary.

We will consider such questions in their order as stated above.

1. With respect to the first question:

It is true, the relation of passenger and carrier is one of contract. It differs, however, from a contract in the ordinary relations of parties to each other, in that it is a contract which a common carrier is not at liberty to decline to make, where the would-be passenger has brought himself within the requirements entitling him to ask of it the service of carriage and he does in fact ask it. The law in such case imposes the duty upon the carrier to render the service, and, under proper circumstances, the law will imply the existence of a contract of carriage.

The conscious acceptance by the motorman or conductor of the car of the offer of a would-be passenger to become a passenger—*i. e.*, the actual meeting of minds of plaintiff and defendant in fact upon a contract of carriage—it is well settled, is not essential to the relationship of carrier and passenger. *Conner* v. *Citizens' Street Railway Co.* (1885), 105 Ind. 62, 4 N. E. 441, 55 Am. Rep. 179; *Marshall's Adm'r*

v. *Boston Elevated Ry. Co.* (1909), 203 Mass. 40; 88 N. E. 1094; *Ormand* v. *St. Louis Transit Co.*, 102 Mo. App. 207, 76 S. W. 680; 2 Hutchison on Carriers (3rd ed.) 1906, sec. 997; *Klinck* v. *Chicago City Railway Co.*, 262 Ill. 280, 104 N. E. 669, 52 L. R. A. (N. S.) 70, 73, Ann. Cas. 1915 B, 177; Nellis on Street Railways, sec. 301, p. 600.

The usual position taken by the authorities on the subject is that the act of a carrier in stopping a street car, or in bringing it almost to a stop at a place where it is accustomed to receive or discharge passengers, is. an implied invitation by the carrier to a would-be passenger to get aboard, regardless of the motive or mental attitude of the employee controlling the movement of the car, and an acceptance by a would-be passenger of this implied invitation, creates the relationship of carrier and passenger. The law under such circumstances implies the contract of carriage.

In the case of *Klinck* v. *Chicago City Railway Co., supra,* the court said:

"As Klinck was standing at a place where defendant was accustomed to receive and discharge passengers, for the purpose of boarding the car, and as the speed of the car was reduced as it approached him, apparently for the purpose of receiving and discharging passengers, the relation of passenger and carrier existed between him and plaintiff in error when he attempted to board the car and was injured. * * *

"The instruction, as offered, is clearly wrong. It would have required the plaintiff to prove that the employees in charge of the car knew that he intended to board the car. While it is necessary to prove either an express or implied contract of carriage, yet the act of the carrier in stopping a street car, or in bringing it almost to a stop at a place where it is accustomed to receive and discharge passengers, is an implied invitation to persons intending to take pas-

sage thereon at that place to board the car and the act of any such person in attempting to board the car is an acceptance of the implied invitation, and creates the relation of carrier and passenger. It was the duty of those in charge of the car to know whether or not the implied invitation was accepted, and the carrier cannot escape liability by showing that its employees in charge of the car did not know that the person who had accepted the implied invitation intended to board the car."

It is true that in a case where the servant of the defendant in charge of the movement of the car does not in fact see the intending passenger, and is not in fact aware that he wishes to become a passenger, the situation must be such that in the exercise of ordinary care in the discharge of its duty as a common carrier the defendant through such employee ought to have seen him or have been aware that he wished to become a passenger, before the law will imply the contract of carriage. Such was the case at bar, however, as we must regard it under the rule governing us.

The note of Judge Freeman, 104 Am. St. Rep. 586, cited by counsel for defendant is not in conflict but in accord with this position.

The question under consideration was not involved in the case of *Reynolds* v. *Richmond, etc., Ry. Co.,* 92 Va. 400, 23 S. E. 700, cited and relied on by counsel for defendant. In that case the intending passenger was not at the usual place for taking or discharging passengers and hence had not brought himself within the requirements entitling him to ask of the carrier the service of carriage.

The remaining authorities cited by counsel for defendant on this point are distinguishable from the instant case. For the most part they are cases where the situation was such that the employees in charge of the movement of the defendant's car in the exercise of ordinary care were not to be expected to become aware of the situation of the

plaintiff, such as that the latter was not at the usual stopping place for passengers to board or alight from defendant's cars, or other situations in which no duty arose upon the part of the carrier to use care to become aware of the position of the plaintiff. It is not believed therefore that a detailed discussion of such authorities would serve any useful purpose.

2. With respect to the second question.

Since the decision of the case of *City of Newport News, &c.* v. *McCormick*, 106 Va. 517, 56 S. E. 281, by this court, it has been the settled rule in this State that it is not negligence *per se* to *alight* from a slowly moving street car. The same legal rule applies to the *boarding* of a slowly moving street car. In both cases the act of a person injured by the attempt to alight from or board a moving car would be the immediate cause of the injury. But the general doctrine of the law of negligence is that where a cause "which results in injury to a person is set in motion by another, that other will be liable to the person injured although the intervening act or omission of such person was the immediate cause of his receiving the injury, provided the circumstances surrounding him are such that his act or omission ought not to be imputed to him as a fault" (1 Thompson on Neg., sec. 64),—*i. e.*, where the latter act or omission occurs in the exercise of ordinary care by the person injured. That is to say, the general doctrine of the law of negligence is, that the act or omission of the person injured, if it occurs in the exercise of ordinary care on the part of the latter, cannot be regarded as the proximate cause of the injury. Certainly this doctrine is applicable to the conduct of passengers boarding or alighting from slowly moving street railway cars under the rule in this State above mentioned. Under it, where the car being in motion is due to the negligence of another and contact with it causes the injury, the question of fact is, whether the act of the person injured,

in attempting to board a slowly moving car, was one of ordinary care. If so, such act cannot be considered as the proximate cause of the injury.

Counsel for defendant contend that although it were granted that the defendant was negligent in not stopping its car, and although the plaintiff was not negligent *per se,* or at all,—but was in the exercise of ordinary care when he attempted to board the slowly moving car, yet, if injured in so doing, such act was the proximate cause of the plaintiff's injury and hence he cannot recover. As we have seen above, such position confuses immediate cause with proximate cause. Therefore, it cannot be sustained upon principle. Nor can it be sustained upon authority, where the rule is in force which is in force in Virginia applicable to moving street car cases. Such a position could not be tenable without overturning the settled rule on the subject in this State.

Counsel for defendants cite, rely upon and quote from a paragraph in the majority opinion of this court delivered by its able and learned president, Judge Keith, in the case of *C. & O. Ry. Co.* v. *Paris,* 111 Va. 41, at pp. 49 and 50, 68 S. E. 398, 28 L. R. A. (N. S.) 773, to sustain the position in question. It is quite true that if what is there said were carried to its logical conclusion and were applicable to the instant case, it would sustain the position of counsel and necessitate our overruling the case of *Newport News, &c., Co.* v. *McCormick, supra.* But aside from the question as to whether it was necessary for the decision of that case (a consideration of which it is unnessary for us to here enter upon) what was there said was in reference to the facts of that case; and, in view of our opinion of the soundness of the principle on which the rule established in *New-*

*port News, &c., Co.* v. *McCormick, supra,* is based, it is sufficient for us to say that we cannot apply to the instant case the said citation relied on by counsel for defendant.

For the foregoing reasons we find no error in the judgment complained of and it will be affirmed.

*Affirmed.*