[No. 23270. Department One. December 18, 1931.]

R. H. DAHLINE *et al., Respondents,* v. THE CITY OF SEATTLE, *Appellant.*[1]

*A. C. Van Soelen, C. C. McCullough,* and *John A. Logan,* for appellant.

*Vanderveer, Beardslee & Bassett,* for respondents.

BEELER, J.—On the forenoon of January 11, 1930, the respondent Edna Dahline, while alighting from one of appellant's street cars, at White Center, slipped and fell because of the presence of ice and compact snow on the step of the car, as alleged by the respondents in their complaint. The appellant denied the charge of negligence that it had permitted ice and snow to accumulate on its car step, and by way of an affirmative defense alleged that whatever injuries Mrs. Dahline may have sustained were due to her own negligence. These affirmative allegations were denied by the respondents in their reply.

[1]Reported in 5 P. (2d) 1010.

Upon these issues the cause was tried to the court and a jury, resulting in a verdict in favor of the respondents. Appellant's motions for judgment n. o. v. and, in the alternative, for a new trial, were overruled. Judgment was entered on the verdict, and this appeal followed.

The question whether ice and snow had accumulated on the step of the street car and whether the step was slippery is foreclosed by the verdict of the jury, the evidence in that regard being sufficient and ample to support the verdict. The vital questions to be determined are: First, was Mrs. Dahline a *passenger* within the legal acceptance of that term; and second, did the lower court err in instructing the jury that Mrs. Dahline was a passenger as a matter of law, or should that question have been submitted to the jury for its determination? A consideration of these questions necessitates an extended statement of the facts.

The appellant maintains and operates a street railway system. One of its branch lines extends to White Center and Seahurst, two suburbs, the former being situated immediately to the south of the corporate limits of the city of Seattle, while the latter is about three miles south of White Center. This branch line passes through White Center over or along Sixteenth avenue, which extends in a northerly and southerly direction and crosses Roxbury street, which extends in an easterly and westerly direction.

The appellant operates a one-man pay-as-you-enter street car between Seahurst and White Center, the operator of the car discharging the duties of a motorman and of a conductor. A receptacle is attached to this car near the entrance door or gate, into which intending passengers are required to drop or place their fares. A passenger boarding this street car at Seahurst intending to ride to Seattle is required to trans-

fer at White Center. The south side of Roxbury street, at its point of intersection with Sixteenth avenue, is the northerly terminus of the car operated between Seahurst and White Center, while the north side of Roxbury street is the southerly terminus of street cars operated between White Center and Seattle.

At about eleven o'clock in the forenoon of January 11, 1930, the respondents were standing on Sixteenth avenue on the south side of Roxbury street, intending to board a street car for Seattle. Presently appellant's street car approached from Seahurst and stopped at its regular or customary stopping place—at the point of intersection of Sixteenth avenue and Roxbury street. The operator opened the door or gate and got off of the car to adjust the trolleys. In the meantime, the respondents boarded the car.

Mrs. Dahline paid her fare by depositing a token into the receptacle. They both took seats. There were several passengers on the street car, some of whom had boarded the car at Seahurst, who also intended to go to Seattle. These passengers, variously estimated from eight to twelve in number, remained on the car from the time respondents boarded it and until they alighted from the car. This car was headed in a northerly direction towards Seattle, the ultimate and intended destination of respondents.

After respondents had been in the car possibly four or five minutes, the operator boarded it and, on observing the respondents, who reside at White Center, stated:

"I told them (meaning respondents) I knew they lived in that district, and I had never carried them, so I presumed they were going north in the city (Seattle), so I told them they were on the wrong car. Well, they started to get off and I said 'you might as well stay here. It is cold and as soon as the other car comes you can get off and catch the other car for town.'

"I knew they wanted to go to town. I said: 'This car is not going to town. It goes back from here and you will catch your car across the street,' and they started to get up and go and I said 'You can stay here until the other car comes. It is quite cold out, and you might as well be here as outside.' "

The respondents, as well as the other passengers who intended to go to Seattle, in response to this invitation remained in the car until the arrival of the street car from Seattle. When the Seattle car arrived, it stopped at its regular stopping place on Sixteenth avenue—north of Roxbury street. Thereupon the operator, the respondents and several other passengers started to get off the Seahurst car in order to board the Seattle car. The operator was the first to get off. Next in line was Mrs. Dahline, and as she reached the gate or door of the car, she placed her foot upon the step, and in so doing slipped and fell.

The appellant contends that the court erred in giving to the jury instructions Nos. 8 and 9.

Instruction No. 8 reads:

"I instruct you that the measure of care which a common carrier of passengers by street car owes to one of its passengers is not the ordinary care which the law exacts from people standing in other relationships. The law requires that a common carrier of passengers shall exercise the highest degree of care to protect such passengers from injury which is compatible with the practical operation of its street car, and if it fails to exercise this high degree of care, and one of its passengers is injured as a natural and proximate result, it is liable in damages for the injury so caused unless such passenger was guilty of contributory negligence."

Instruction No. 9 reads:

"I instruct you that if by the exercise of that high degree of care which the law exacts from all common carriers of passengers, the defendant or its agent in

charge of the street car could have ascertained the presence of the snow and ice on the street car steps, if any there was, and had opportunity to clear the steps at the end of the run and failed to do so, if you so find, and if as a result of such failure or neglect the plaintiff was injured as alleged in the complaint, then her injuries were due to the negligence of the defendant and she would be entitled to recover, provided she, of course, was without negligence."

Thus it will be seen that the court instructed the jury that Mrs. Dahline was a passenger as a matter of law, and that it was the duty of the appellant, in the operation of its street car, to exercise the highest degree of care to protect her from injury. The appellant contends that the instructions were erroneous, and maintains that whether Mrs. Dahline was a passenger was a question of fact which should have been submitted to the jury for its determination.

We cannot so hold. In our opinion, the instructions accurately and tersely stated the law applicable to the facts of the case. When the car arrived from Seahurst, the operator stepped off to adjust the trolleys and left the gate or door open. Leaving the door open was in itself an invitation to the respondents to board the car. It cannot be denied that the respondents boarded this street car intending to go to Seattle, in which direction the car was then headed. There were several passengers on the car, all of whom remained seated. Mrs. Dahline, after she entered the car, paid her fare. Both of the respondents took a seat. They remained in their seats until the operator returned to the car after he had adjusted the trolleys. The respondents then, for the first time, learned that that particular car was not going to Seattle, and thereupon started to leave the car, but were invited by the operator to remain until the arrival of a car from Seattle.

It is clear that the Seahurst car was waiting the ar-

rival of a car from Seattle in order to transport the passengers, if any, who might be on that car and who might desire to go to Seahurst. The respondents remained on the Seahurst car at the invitation of the operator and used it as a temporary waiting room until the arrival of the Seattle car. They at no time abandoned their intention of going to Seattle. The Seahurst and the Seattle cars were both owned and operated by the appellant for the accommodation and use of its passengers, and the mere fact that respondents mistakenly entered the Seahurst car in no way altered their status as passengers.

"A person becomes a passenger of a street car as soon as he has set his foot on the step or running board, in the act of getting into the car, after it has stopped, with the intention of becoming a passenger." 10 C. J. 617.

See, also, *Shannon v. Boston & A. R. Co.*, 78 Me. 52, 2 Atl. 678; *Virginia Ry. & Power Co. v. Arnold*, 121 Va. 204, 92 S. E. 925; *Chapman v. Kansas City Rys. Co.*, 217 S. W. (Mo.) 290; *Cross v. Kansas City, Fort Scott & Memphis R. Co.*, 56 Mo. App. 664.

This court heretofore laid down the rule that, where one, intending to become a passenger, boards a street car at its regular or usual stopping place and pays his fare, he becomes and remains a passenger until he safely alights therefrom, although the car is not being used at that particular moment for the purpose of conveying passengers, but is on its way to a street car barn.

"Finally, it is contended Mrs. McIlwaine was not a passenger, and therefore it was error to hold the appellant to the highest degree of care. Mrs. McIlwaine boarded the car believing it to be one on which her husband was conductor, intending to pay her fare. We think that, while on the car, she was a passenger so far as imposing a duty upon the appellant, and that

this duty continued until she had alighted in safety. The evidence is susceptible of a finding which, in the light of the verdict, must be accepted, that the car stopped at a usual stopping point, and that Mrs. Mc-Ilwaine, in the exercise of due care, got on the platform for the purpose of taking passage. This would make her a passenger, and having become such, she must be so considered until she had alighted from the car in safety." *McIlwaine v. Tacoma Railway & Power Co.*, 72 Wash. 184, 129 Pac. 1093.

But the appellant contends that, before the relationship of carrier and passenger can arise, there must be a formal acceptance by the carrier of the intended passenger. The rule as laid down in the *McIlwaine* case, *supra,* is to the contrary, and is in harmony with the rule of foreign jurisdictions.

"The conscious acceptance by the motorman or conductor of the car of the offer of a would-be passenger to become a passenger—i. e., the actual meeting of minds of plaintiff and defendant in fact upon a contract of carriage—it is well settled, is not essential to the relationship of carrier and passenger." *Virginia Ry. & Power Co. v. Arnold,* 121 Va. 204, 92 S. E. 925.

However, under the facts and circumstances of this case there was an acceptance. As the respondent Mrs. Dahline entered the car, she deposited her fare into the receptacle or box—an instrumentality or device used by the appellant for the collection of fares. The appellant seems to argue that, since the fare was not collected by a conductor, there was no meeting of the minds. We can see no difference in principle in collecting a fare by means of a receptacle of this kind, although mute and inarticulate, from the collection of a fare by a human agency stationed there for that purpose.

The case of *Foster v. Seattle Electric Co.,* 35 Wash. 177, 76 Pac. 995, cited and relied on by the appellant,

is not in point. There the plaintiff attempted to board a street car after it had started, and while it was in motion. It appeared that the conductor in that case neither saw nor could have seen the plaintiff in his attempt to board the car.

The remaining assignments relate to the refusal of the court to grant the appellant's motions for judgment n. o. v. and, in the alternative, for a new trial. These assignments present the same question heretofore discussed, and hence no further comment need be made in relation thereto.

Judgment affirmed.

TOLMAN, C. J., MITCHELL, and PARKER, JJ., concur.

HERMAN, J. (dissenting)—I dissent. The issues as determined by the pleadings raise a question as to whether or not respondent Edna Dahline was a passenger in the street car. It is true that the testimony introduced at the trial shows that respondents boarded the car for the purpose of traveling on that car toward their destination. However, testimony was also introduced showing that, after the conductor told them they were mistaken as to the destination of the car which they had boarded, they started to leave, and then availed themselves of the conductor's permission to enjoy the warmth of the street car while awaiting the arrival of the car which would take them to their destination, remaining on the car for a considerable length of time after they had abandoned their intention of traveling thereon.

Under these circumstances, in my opinion, the question as to whether or not Mrs. Dahline was a passenger was one of fact to be determined by the jury, and the trial court erred in instructing the jury that she was a passenger as a matter of law.