CHARTIERS TP. v. JAMES J. PHILLIPS.

ERROR TO THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY.

Argued October 15, 1888—Decided October 29, 1888.

1. In an action for damages for injuries resulting from the alleged negligence of the defendant, the contributory negligence of the plaintiff, if shown to have existed, is sufficient alone and of itself to discharge the defendant from all liability.
2. So, also, if the accident was produced by an intervening and independent cause, for which the defendant was not responsible, that too will relieve the defendant, whether combined with the plaintiff's contributory negligence or not.
3. Where there was evidence tending to show that the accident resulting in the injury " was caused by the uncontrollable struggle of a choking horse," it was error to refuse to instruct that if the jury so found, their verdict should be for the defendant, " unless the plaintiff by his negligence contributed to or was the cause of " such struggle.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and HAND, JJ.; WILLIAMS, J., absent.

No. 93 October Term 1888, Sup. Ct.; court below, No. 264 November Term 1886, C. P.

On October 29, 1886, James J. Phillips brought an action in case against Chartiers township, to recover damages for in-

juries alleged to have been caused by the negligence of the defendant.

At the trial on March 6, 1888, the case of the plaintiff in chief was to this effect:

On March 30, 1886, the plaintiff was about to drive from the place of Huston Phillips, in Chartiers township, to Canonsburg, and to pick up John F. Butler on the way. The mare had been ridden to the place of Mr. Phillips, and was to be harnessed with harness belonging to Wm. Butler and to be hitched in the latter's buckwagon. The horse on which the harness was used was about the size of plaintiff's mare. While the plaintiff was talking with Huston Phillips, the mare was harnessed and hitched by a neighboring farmer, who called out that everything was ready. The plaintiff then got into the wagon and drove some distance, when John F. Butler entered the wagon with him. Nothing occurred indicating that the mare had any difficulty working in the harness.

They approached a point where the road was narrow; 11 ft. 8 in. in width, as measured the next day. On the left side, going in the direction they were driving, there was a steep declivity, extending thirty or forty feet from the edge of the road to projecting rocks which hung over a stream. At the top of the slope was a fence four or five rails high, of old rails, staked, with a single rider. The worm of the fence lay along the slope of the hill from the edge of the road; that is, the bottom rail was on or near the ground at each end with nothing to keep the fence in position, if thrust against from the roadside, except the stakes, insufficient for that purpose on account of the slope of the ground on which they stood.

On the right hand side of the road the ground sloped from the roadway up under the fence and into the field above, with no rocks or stones to prevent a widening of the roadway. The soil of the roadway was a stiff limestone soil, of a character to make a good solid road when kept drained, but there was no drain to carry away the water which came down from the fields above.

As this narrow part of the road was reached coming southward, there stood a large oak tree, with its base and roots projecting nearly if not quite half way across the roadway. Its presence there had caused the heavy wagons to pass in towards

the upper side of the road, then to turn to the left. From the tree onward there was a slight up grade of about one degree. The water, if it could run at all, would thus run northward in the direction of the tree, but just before it reached the tree it had turned into the roadway causing a deep mud hole, through which teams having passed the tree were compelled to travel.

When the plaintiff and Butler had passed the tree they had to pass through the mud hole, then axle deep and from twelve to fifteen feet in length, when they emerged into a deep stiff mud out of which the mare could with difficulty lift her feet. Struggling along a little further in or near the middle of the roadway, suddenly the mare rose with her fore quarters, fell over to the left directly upon the fence, which gave way before her, and the team slid down the steep and over the projecting rocks, the mare falling upon the bed of the stream, while the plaintiff was pitched upon the farther bank. On examination it was found that, in the opinion of the physicians, the head of the right thigh bone had been driven through the hip-socket, causing great suffering and permanent disability.

In the defendant's case in chief, testimony was introduced that at the time of the accident the roadway was from thirteen to fifteen feet wide ; that in respect of condition for travel it was not worse than other country roads for the time of the year, some of the witnesses testifying that there was no mud hole at all near the tree ; that but a small amount of surface drainage reached the bed of that part of the road, which was of material easily discharging the water that did reach it ; that the fence at the edge of the road was a substantial worm fence of rails comparatively new; and, as evidence that the mare's fall was caused by the fact that the collar on her was so tight that it choked her, eight witnesses were called who testified to statements made by the plaintiff, some of them on the ground just after the injury, and others shortly afterward, that the accident was the plaintiff's own fault, " that he should not have put that collar on the mare, it was too small and choked her;" "when the collar was put on, he saw it was too tight, but thought it would take them to Canonsburg."

In his rebuttal case, the plaintiff denied that he had made the statements as to the tightness of the collar, attributed to him, and called a number of witnesses, among others the farmer

who harnessed the mare, who testified that the collar was not too tight, but was a good fit, not only when placed upon her, but as shown by trials made after the injury.

The court, McILVAINE, P. J., after reviewing the evidence with general instructions, proceeded :—

The plaintiff claims that the road where the accident happened was narrow; that the drainage was bad; that there was a large mud hole in the centre and extending almost across the road, and that the east side of the road next to a steep bank was not sufficiently guarded. You will carefully consider all the testimony bearing upon each of the alleged defects ; you will take into consideration the location of the road, the extent and kind of travel over it, the season of the year and all the relevant surrounding circumstances and then determine, first, whether the township, by its proper officers, has been guilty of negligence in that they failed to have this road, on March 30, 1886, in a condition to afford a reasonably safe passage for the traveling public along it at this point; and, second, whether this negligence, if you find it, was the proximate cause of the plaintiff's injuries. For it would make no difference how negligent the township had been or was, in not repairing and keeping the road in good condition, if the accident was not the direct result of this negligence. To illustrate : Considerable has been said about this large oak tree that stood in the side of the road, and, conceding that allowing that tree to remain there would be a neglect of duty on the part of the township, endangering the traveling public, still this negligence cannot be made the basis of the plaintiff's claim in this suit, unless the existence of the tree at that point contributed to the accident.

Now, gentlemen, if after having carefully considered all the testimony in the case bearing on this branch of it, you should find that this piece of road was in a reasonably safe condition, under all the circumstances, when the accident happened, and that the accident could not reasonably be attributed to the negligence of the township, then you need go no further in your inquiry, for your verdict under such circumstances should be for the defendant.

But if you find that the township has been guilty of negli-

gence in this regard, then you will proceed to the second inquiry and determine whether the plaintiff, by his own negligence, in any degree directly contributed to the result. Did he do anything which preceded and had a direct connection with his going over the bank, that an ordinarily careful and prudent man would not have done, or did he leave any such thing undone that an ordinarily careful and prudent man would not have left undone?

The law that requires the township to keep its roads in a reasonably safe condition also requires the traveler to exercise the care and caution of an ordinarily prudent man while passing over these roads, and if his own carelessness in any degree contributes to the bringing about of an accident which in part could be attributed to the negligence of the township, then in such a case the township is relieved from liability, because it is only liable where the injury is the result of its own negligence and not the concurrent negligence of the township and the party injured. A traveler has a right to presume that roads are in a safe condition, but it is nevertheless his duty to keep his eyes about him and see that his wagon, horse and harness are in a condition for making the journey he proposes to make or is making, and that his horse is not allowed to go where he pleases on the road, but that he is properly driven. The driver must keep a lookout for the condition of the road over which he is driving; in other words, he must attend to the business in which he is then engaged. The degree of care required of a traveler in these matters that I have just been speaking of, is a degree of care that would be exercised by an ordinarily prudent or cautious man under the surrounding circumstances. Now, did the plaintiff in this case exercise this care? The defendant says not. They claim that the plaintiff's mare choked; that the accident would not have happened if the mare had been properly collared and had not choked.

On the one hand, it is claimed that the collar was one that had been used on another horse, that it was too small; that Mr. Phillips knew this; that he has several times admitted this fact, and that he also had admitted that the mare choked and that the accident was his own fault. On the other hand, it is claimed that this collar was not too small, that the mare did not choke, and Mr. Phillips denies that he ever admitted

that he knew the collar was too small, or that he ever admitted that the mare choked. Mr. Phillips says that he trusted to Mr. Donnell to put the harness on; that he knew, however, that the collar was a strange collar, and that he did not examine the collar or harness or how they fit. [Now, gentlemen, you will consider all the testimony bearing on this point, and determine whether this collar was too small, and whether its use resulted in choking the mare at the time of the accident. If you conclude that the collar was too small and choked the mare, and that this choking was the immediate cause of the accident, then you will determine from all the circumstances in the case as they appear from the testimony bearing on this point, whether the plaintiff knew that the collar was too small and took upon himself the risk of using it, or if he did not know it, whether, under all the circumstances, he ought to have known it.] [3] He was bound in the use of the horse, harness and buckwagon, to exercise the care of an ordinarily cautious and prudent man accustomed to handling and driving horses.

If on all the evidence you conclude that the plaintiff was negligent in this regard and that this negligence of the plaintiff in this regard or in any other regard, contributed in any degree to the accident, then this is the end of the plaintiff's case and your verdict should be for the defendant. If you find, however, that this accident was the result of the township's negligence and that the plaintiff did not in any degree by his own negligence and carelessness contribute to its happening, then your next inquiry will be what amount of damages ought this plaintiff to recover.

\*        \*        \*        \*        \*        \*        \*        \*

The defendant asks us to charge you as follows :

\*        \*        \*        \*        \*        \*        \*        \*

4. To render a township liable for an injury by a defect in the highway it must have been the sole efficient cause of the injury, and if the jury find from the evidence that this accident to the plaintiff was caused by the uncontrollable struggle of a choking horse, or from this cause concurring with a defect in the highway, then their verdict must be for the defendant.

Answer: Refused, unless the plaintiff by his negligence contributed to or was the cause of "the uncontrollable struggle of the horse." [1]

5. If the jury find from the evidence that the plaintiff's horse, on account of the use upon him of a collar that was too small, choked and became uncontrollable and plunged blindly over the bank, and if they further find that the horse would not have turned from the way or gone over the bank but for such choking, then the defendant is not liable.

Answer: Affirmed, with the understanding that the cause set forth in the point was the sole and immediate cause of the horse going over the bank.[2]

If the fourth and fifth points are refused, then the court is requested to charge the jury:

6. If the jury find from the evidence that the plaintiff was negligently using a collar which was too small for the horse he was driving, and that this negligence directly contributed in any degree to his injury, then their verdict must be for the defendant.

Answer: Affirmed.

9. That upon all the evidence in the case the verdict of the jury must be for the defendant.

Answer: Refused.[4]

The jury returned a verdict in favor of the plaintiff for $3,229.35. Judgment having been entered on the verdict, the defendant took this writ, and assigned as error:

1. The answer to the defendant's 4th point.[1]
2. The answer to the defendant's 5th point.[2]
3. The part of the charge embraced in [ ][3]
4. The answer to the defendant's 9th point.[4]

*Mr. M. L. A. McCracken* (with him *Mr. M. H. Stevenson* and *Messrs. J. W. & A. Donnan*), for the plaintiff in error:

1. In the answer to the defendant's fourth point, the court failed properly to distinguish between contributory negligence and the result of an intervening and proximate cause, operating independently of, or in connection with, the negligence (if any there were) of the defendant. The defendant would not be liable for the injury to the plaintiff, if the injury was the result of the uncontrollable struggles of a choking horse, even though those struggles operated concurrently with a defect in the highway, and without any reference to whether the strug-

gles of the horse were or were not the result of a carelessness on the part of the plaintiff. To the comprehension of the average juror, the question raised by the point was not answered. So, the answer to the defendant's fifth point, instead of directing the attention of the jury to an inquiry as to whether there were two or more concurring causes contributing to the accident, for only one of which the defendant would be answerable, their attention is diverted from the question raised and directed to the question of contributory negligence on the part of the plaintiff. The defendant was entitled to an unqualified affirmance of this point.

2. "The general rule, we understand, is, that where two or more causes concur to produce an effect, and it cannot be determined which contributed most largely, or whether, without the concurrence of both, it would have happened at all, and a particular party is responsible only for the consequences of one of these causes, a recovery cannot be had, because it cannot be judicially determined that the damage would have been done without such concurrence, so that it cannot be attributed to that cause for which he is answerable:" SHAW, C. J., in Marble v. Worcester, 4 Gray 395. True, the authority of this case has been called in question, but later cases have affirmed it, and Sutherland on Damages, ed. 1882, 37, adopts the doctrine as undoubted law. And see Moulton v. Sanford, 51 Me. 127; Perkins v. Inhab. of Fayette, 68 Me. 151; Titus v. Northbridge, 97 Mass. 258. The question raised has never been before the Supreme Court of this state just as it is presented, but we take it to be substantially the same as in Bishop v. Schuylkill Tp., 20 W. N. 105.

3. On the facts disclosed in this case, the want of a barrier higher and stronger than the fence along the lower side of the road where Mr. Phillips was injured, was not, in any legal or practical use of the phrase, the cause of the accident. The natural and ordinary way of accounting for his injury would be to say that his mare was choked off her feet. The blind violence of the mare in the extremity of suffocation, was the supervening and proximate cause. In the nature of things the jury could not know what a frantic horse might do when being choked off its feet, and therefore would not know that the accident could not have occurred if there had been a barrier at the

point such as the plaintiff claims there should have been. When all the facts and their relation to the injury are found, the question, what is the sole, efficient cause, in the legal intent of the phrase, is a question of law: Marble v. Worcester, supra, and cases therein cited.

Mr. *James P. Sayer* (with him Mr. *E. E. Crumrine* and Mr. *Boyd Crumrine*), for the defendant in error:

1. Philosophically, every injury, of the nature of the one discussed, may have several efficient causes, one of which is primary in the order of time, another proximate in its relation to the injury. For instance, without negligence of a driver, his team may receive a push from another, and an injury occur through the narrowness of a highway unprotected by barriers at a steep declivity. A fright to a horse ordinarily gentle and trained, may be followed by a like injury. An axle may break under careful conditions with like result. Now, the push, the fright, the break, though they are efficient causes and are combined with the negligence of the township in producing the result, yet they are primary, and not proximate; they do not intervene between the negligence and the injury, but the negligence intervenes between the injury and them, and without the negligence the injury would not have occurred.

2. In Lower Macungie Tp. v. Merkhoffer, 71 Pa. 276, the primary causes of the injury were the excavation by the Allentown Iron Co. and the shying of the skittish animals; yet the negligence of the township in not providing the barrier was the proximate efficient cause. So, in Pittston Bor. v. Hart, 89 Pa. 389, the fright of the horse by the locomotive engine, was primarily efficient, yet "the direct cause of the injury" was the want of barriers. So, and with more force in this connection, in Hey v. Philadelphia, 81 Pa. 44, an illustration is found; and again, in Carlisle Bor. v. Brisbane, 113 Pa. 544. In that case, the primary efficient cause of the injury was the negligence of Cornman, who undertook to drive the plaintiff around as a friend, but in the "eye" of the law the proximate and culpable cause was the negligence of the defendant.

3. And Burrell Tp. v. Uncapher, 117 Pa. 353, should not be forgotten. The steam thresher was *the* primary cause, and its presence upon the road a culpable negligent act of a third

party, but the proximate cause was the negligence of the township in not providing barriers. In short, in all such cases, the primarily efficient cause, the choking in this instance, assuming that it existed, was but the casus or condition under which the proximate cause, the negligent act, had its operation: See Wharton, Negligence, 2d ed., §§ 85, 86. As was said by MARSTON, J., in Mich. Cent. R. Co. v. Burrows, 33 Mich. 15: "The law cannot enter upon an examination of, or inquiry into, all the concurring circumstances which may have assisted in producing the injury and without which it would not have happened. To do so would only be to involve the whole matter in uncertainty," etc.

4. As to the Maine cases cited, Moulton v. Sanford, 51 Me. 134, is quoted in a note to Whart. on Neg., 68, § 78, and shown to be a divergence from the well settled rules of other states. If the principle of the case, as stated and criticised there, be sound, the Pennsylvania cases cited by us could not have been decided as they were. But in Maine as well as in Massachusetts, they seem to have a rule like that quoted by the defendant from Marble v. Worcester, 4 Gray 395, and eminent textwriters hold that these rules in these New England states, are local, because only a statutory and not a common law liability is there recognized: Whart. on Neg., 2d ed., §§ 85, 984; Shear. & Redf. on Neg., §§ 401, 416.

5. But, was this the question in this case? Points are presumed to be put for instructions, and answers to be made to them in view of the case presented on the evidence. There was no direct testimony whatever that the collar was too tight and that the mare choked and fell from that cause. The direct testimony was all the other way. And to what weight are the declarations, alleged to have been made by the plaintiff entitled, when they were made, if made at all, when he was suffering great pain, and, especially, in view of the positive testimony that the collar was not too tight at all? Declarations made in casual conversations are the weakest of all evidence: Bender v. Pitzer, 27 Pa. 336; 1 Greenl. Ev. § 200.

OPINION, MR. JUSTICE GREEN:

It is beyond all question that the direct and immediate cause of the plaintiff's injury was the overturning of the wagon

in which he was riding.   It is equally certain that the wagon was upset by the sudden falling of the animal that was drawing it.   What caused the mare to fall is not clear, and is not explained by the plaintiff's testimony.   She did not take fright, she was not running away, but on the contrary was moving very slowly through a mud puddle.   She got entirely through, and then to use the language of the plaintiff in his testimony, "the mare just fell over and fell with her head and neck right across the fence."   The fence gave way and the plaintiff was precipitated down the bank by the side of the road and was injured. Of course, the fence, whether sufficient or insufficient to sustain the force of the fall, had nothing to do with producing the fall.

The defendant alleged, and gave evidence to prove by the declarations of the plaintiff to a number of witnesses, that the mare was harnessed with a collar too small for her, and that it choked her, and this choking was the real cause of the mare's falling.   If this was the true cause of the falling of the mare, it is difficult to understand how the defendant could be held responsible either for the fall or its consequences.   The defendant in the fourth point asked the court to charge the jury, that if the accident was caused by the uncontrollable struggle of a choking horse, or from this cause concurring with a defect in the highway, their verdict must be for the defendant.   To this the court replied, "Refused, unless the plaintiff by his negligence contributed to, or was the cause of the uncontrollable struggle of the horse."   The vice of this answer is, that the court confounded the effect of an independent cause of the accident, with the effect of the plaintiff's contributory negligence, and really held that it required a combination of the two in order to relieve the defendant from responsibility for the accident.   Now, the contributory negligence of the plaintiff alone and by itself, if it existed, was sufficient to discharge the defendant from all liability.   So, also, if the accident was produced by an intervening and independent cause for which the defendant was not responsible, that too would relieve the defendant from liability, and this was the meaning and substance of the point.   The point should have been affirmed as it stood.   It was, however, refused, unless the independent cause was combined with another

and quite different agency, to wit, the plaintiff's contributory negligence, and in this there was error. The first assignment of error is therefore sustained.

The same idea though in a somewhat different form was repeated in the portion of the charge covered by the third assignment. The court there said, " If you conclude that the collar was too small and choked the mare and that this choking was the immediate cause of the accident, then you will determine from all the circumstances in the case as they appear from the testimony bearing on this point, whether the plaintiff knew that the collar was too small and took upon himself the risk of using it, or, if he did not know it, whether under all the circumstances he ought to have known it." Here, again, although the choking of the mare, resulting from a too tight collar, was " the immediate cause of the accident," it is practically held to be no defence unless the plaintiff had knowledge of it, or ought to have known it. In other words, unless his concurring negligence was combined with " an immediate cause of the accident " for which the defendant was not responsible, there could be a recovery. As we have already seen, this was clear error. This error is more conspicuous because of the answer to the defendant's fifth point. In that point the proposition was presented that the defendant was not liable if the horse choked from a collar too small for him and became uncontrollable and plunged over the bank and would not have done so but for the choking, and this the court affirmed. But if this be so, as it certainly is, it was both inconsistent and erroneous to say that in addition to this there must be concurrent negligence of the plaintiff. If the tight collar produced the choking which caused the horse to fall, and thereby caused the accident, it is certainly of no consequence whether the plaintiff knew that the collar was too tight or not. Whether he had or had not knowledge of the smallness of the collar, and that it was choking the horse, the effect of the choking, as productive of the accident, would be precisely the same, and hence, if as an independent producing cause of the accident, it would suffice to relieve the defendant from responsibility, it would accomplish that result without any reference to the plaintiff's knowledge. The judgment is reversed on the first and third assignments of error.

We find it difficult to discover in the testimony any connection between any delinquency of the defendant and the fall of the horse, in the relation of cause and effect. The plaintiff says he had passed the tree about the distance of five panels of fence, and had also passed through and out of the mud puddle before the mare fell, and hence we cannot understand how either the tree or the mud puddle produced the fall.

Judgment reversed.