# Staunton.

# Appalachian Power Company v. J. H. Wilson.

## September 17, 1925.

1. **Streets and Highways**—*Duty of Public Authorities—Reasonably Safe Road.*—A municipality has discharged its full duty to the public when it exercises proper care to provide and maintain a reasonably safe road of a reasonably safe width for public travel.

2. **Streets and Highways**—*Obstructions—Obstruction in Any Portion of Road.*—The law forbids any person, or corporation, to place or maintain any dangerous obstruction in any portion of a road which has been dedicated to and is being used for public travel.

3. **Streets and Highways**—*Obstructions—Nuisances—Obstructions at Side of Traveled Path.*—Any unauthorized obstruction which unnecessarily impedes or incommodes the lawful use of a highway is a public nuisance, at common law. Thus, it is a nuisance to place logs in a highway where they are not needed in repairing or improving it, even though they are placed at the side of the traveled path. Public highways belong, from side to side and end to end, to the public, and any permanent structure or purpresture, which materially encroaches upon a public street and impedes travel, is a nuisance *per se*, and may be abated, notwithstanding space is left for the passage of the public.

4. **Streets and Highways**—*Obstructions— Traveled Part of the Way—Distinction between Duty of Public Authorities and Private Individual.*—While, as between any town, county, or public authority having supervision of public highways and a traveler, the latter will leave the portion of the road laid out and prepared for the customary use and travel and go upon and use the unprepared and customarily unused part at his own risk, the traveler is nevertheless entitled to the unobstructed and uninterrupted use of the entire width of the highway as against the unlawful acts of other persons, either natural or artificial.

5. **Streets and Highways**—*Location of Obstructions—Evidence that Defendant Placed Obstructions in Road—Case at Bar.*—In the instant case plaintiff was injured when the tongue of his buggy struck a chestnut log lying in the road. While there was some conflict in the testimony as to the exact location of the log, there was ample evidence to warrant the finding that the end of the log was lying just.

eighteen inches from the wheel track in the used portion of the road. And the contention of the defendant that there was no evidence that the defendant either placed the pole in the road or permitted it to remain where it was placed after it knew or ought to have known that it was so placed, was without merit in view of the evidence of a witness and his son that witness sold the pole to the Company and placed it in the road.

6. WITNESSES—*Failure of Company to Summon its Servant as a Witness—Presumption that Servant's Testimony would have been Against the Company.*—In an action against a power company for injuries resulting from the collision of a buggy with a pole of the power company lying in the highway, the linesman of the company whose duties carried him frequently past the pole after it was placed in the road and who, if he had no knowledge of the location of the pole, could have explained such lack of knowledge, was not called as a witness by the company. Under such circumstances the presumption is that the linesman's testimony would have been against the company.

7. STREETS AND HIGHWAYS—*Obstructions—Injury from Contact with Obstruction—Contributory Negligence of Plaintiff—Case at Bar.*—The instant case was an action for injuries to plaintiff when the tongue of his surrey struck a pole of defendant in the highway. The tongue of the surrey had become detached from the breast yoke and fallen to the ground as plaintiff was driving down a long hill. The surrey proceeded down the hill until the tongue struck the pole of the company lying in the usable or used part of the road. The surrey had the usual equipment for vehicles of that kind and the harness was a good second hand harness. The traces were fastened to the singletree in the usual manner. There was evidence that the dropping of the tongue of the surrey was due to one of the traces slipping off or being knocked off the singletree by one of the mules and that this could occur when the mules were properly hitched. Defendant contended that the tongue dropped because the mules were improperly hooked to the surrey.

*Held:* That the question of the plaintiff's contributory negligence was for the jury, as fairminded men might differ as to whether the dropping of the tongue was due to the negligence of the plaintiff or to causes purely accidental for which the plaintiff was in no way responsible.

8. NEGLIGENCE—*Questions of Law and Fact—When Negligence a Question of Law.*—Negligence only becomes a question of law to be taken from the jury when the facts are such that fairminded men can only draw one inference therefrom. If fairminded men, from the proof submitted, may honestly differ, as to the negligence charged, the question is not one of law, but one of fact to be determined by the jury under proper instructions from the court.

9. NEGLIGENCE—*Proximate Cause—Definition of Proximate Cause.*—Proximate cause does not denote closeness in point of time, but nearness

in causal relation. For negligence to constitute the proximate cause of an injury, the injury must be the natural and probable consequence of the negligence, or wrongful act, and the consequence such as ought to have been foreseen in the light of the attending circumstances.

10. Negligence—*Proximate Cause—Two Combined Causes, One Negligent and the Other Nonnegligent or Purely Accidental.*—When an injury results from two combined causes, one negligent and the other nonnegligent, or purely accidental, the causes having such causal connection as to constitute an unbroken transaction, the law places the liability on the person responsible for the negligent cause and establishes the negligent cause as the proximate cause; unless the nonnegligent cause would have alone been sufficient to bring about the injury, if the negligent cause had been absent. The act or omission of the person injured, if it occurs in the exercise of ordinary care on his part, cannot be regarded as the proximate cause of the injury.

11. Negligence—*Proximate Cause—Two Combined Causes, One Negligent and the Other Nonnegligent or Purely Accidental—Case at Bar.*—In the instant case, an action for injuries arising when the tongue of plaintiff's surrey struck a pole of defendant lying in the highway, if the tongue of the surrey had not fallen to the ground, it could not have struck the pole which occasioned the accident. If the pole had not been placed in the road, the plaintiff would probably have gotten to the foot of the hill without an accident. The original and continuing act of negligence was the maintenance of the log in the road. If the plaintiff's contention be true that the falling of the tongue to the ground was due to a pure accident, and not to any fault on his part, then the defendant's negligence was the proximate cause of the injury, as it was natural and reasonable to expect that such an accident might result from the maintenance of the pole in the road.

12. Negligence—*Proximate Cause—Superseding Cause.*—It is elementary that a cause, to be superseding cause, must entirely supersede the operation of the negligence of the defendant, so that such cause alone, without the defendant's negligence contributing in the slightest degree thereto, in fact produced the injury.

13. Instructions—*Repetition—Failure to Give not Error.*—Where the instructions granted sufficiently instructed the jury upon the law of the case, it is not reversible error for the court to refuse other instructions even though the instructions refused correctly stated the law.

14. Negligence—*Contributory Negligence—Proximate Cause—Appeal and Error—Conclusiveness of Verdict—Case at Bar.*—In the instant case, an action against a power company for injuries to plaintiff arising from his vehicle striking a pole of defendant in the highway, the defendant's negligence, the contributory negligence of the plaintiff and the proximate cause of the injury were fairly submitted to the jury under proper instructions, and the action of the jury in deciding all these questions against the defendant was conclusive on appeal.

Error to a judgment of the Circuit Court of Pulaski county in an action of trespass on the case. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*John S. Draper* and *Robert E. Scott*, for the plaintiff in error.

*Gilmer* and *Wysor*, for the defendant in error.

West, J., delivered the opinion of the court.

This is a suit by J. H. Wilson against Appalachian Power Company to recover damages for personal injuries. There was a verdict and judgment for the plaintiff in the sum of $5,500.00, to which a writ of error was allowed.

The parties will be referred to as plaintiff and defendant, with respect to their positions in the trial court.

On December 23, 1922, J. H. Wilson, the plaintiff, with his family, consisting of himself and wife, a daughter and son-in-law and four small children, was returning from a visit to a neighbor. He was driving a pair of gentle mules to a light surrey, along the Lead Mine public road in Pulaski county. As he came over the top of a long, steep hill, at the foot of which Max creek crosses the road at right angles, at a point in the road about 400 feet from the foot of the hill, the tongue of the surrey, from some unknown cause, became detached from the breast yoke and fell to the ground. The mule on the right jumped over on the left side of the tongue when it dropped to the ground. The surrey proceeded down the hill, but Wilson succeeded in keeping it and the mules in the road until he reached a point seventy-nine

feet from the foot of the hill, where the surrey tongue struck the end of a chestnut log, or pole, lying in the usable and used part of the road, within eighteen inches of the wagon tracks at its upper, and within two feet of it at its lower end. When the end of the tongue, about two feet of which had been broken off further up the hill, struck the end of the pole, the surrey turned over, threw all the occupants out, and seriously and permanently injured Wilson about his hip.

The chestnut pole, which was twelve feet long and nine inches in diameter, was the property of the Appalachian Power Company, and was sold to it by John G. Graham, who, four months before the accident, placed the pole in the place it was at the time of the accident. The company paid him for the pole a few weeks after it was delivered in the road and it remained there for several months when it was used by the power company, as was intended, as a brace or stub pole on the company's line, near the place of the accident.

From the place the accident occurred to the creek the road was nearly straight, not so steep, and much smoother than it was from the place the tongue dropped to the place of the accident.

The wheels of the surrey had rubber tires. The surrey had no brakes and it was not customary in that section to use brakes on that kind of vehicle. The harness was in good condition and was supplied with choke straps to hold the collars down, which made breeching unnecessary.

At the time the upset occurred the mules broke away from the surrey and one of the straps from the breast yoke to the collar and one end of a trace were broken, but neither of these breaks occurred before the surrey was overturned.

The foregoing is a brief statement of the facts from

the standpoint of the plaintiff. The evidence will be further referred to in the course of this opinion.

The defendants assign as error the action of the court in overruling the demurrer to the declaration, giving and refusing instructions, refusing to set aside the verdict of the jury as contrary to the law and the evidence and without evidence to support it, and in refusing to enter judgment for the defendant.

In disposing of these assignments, it will be necessary to consider three questions: (a) Defendant's negligence; (b) plaintiff's contributory negligence; and (c) the proximate cause of the injury.

It is not contended that the defendant's duty required it to keep the road free from obstructions, but to refrain from obstructing the road.

[1-2] A municipality has discharged its full duty to the public when it exercises proper care to provide and maintain a reasonably safe road of a reasonably safe width for public travel. But the law forbids any person, or corporation, to place or maintain any dangerous obstruction in any portion of a road which has been dedicated to and is being used for public travel.

[3] The author, in Elliott on Roads (2d ed.), sections 644 and 645, states the law as to the duty and liability of a private person and a municipal corporation, respectively, where an obstruction is maintained in a public highway, as follows: "Any unauthorized obstruction which unnecessarily impedes or incommodes the lawful use of a highway is a public nuisance, at common law. Thus, it is a nuisance to place logs in a highway where they are not needed in repairing or improving it, even though they are placed at the side of the traveled path. So, it is a nuisance to erect a gate or a fence across a highway, to construct a building thereon, or to cut a ditch or mill race across it, without bridging the same or

otherwise restoring the way to its former safe and convenient condition so as not to impede or endanger travel. Public highways belong, from side to side and end to end, to the public, and any permanent structure or purpresture, which materially encroaches upon a public street and impedes travel, is a nuisance *per se*, and may be abated, notwithstanding space is left for the passage of the public."

[4] The court in *Williams* v. *San Francisco, etc., Ry. Co.*, 6 Cal. App. 715, 93 Pac. 122, lays down the doctrine that "no one has any lawful right to maintain an obstruction of any character or nature upon a public highway or road laid out for and dedicated to the purpose of public travel." Proceeding further, the court, discussing the apparent conflict of views in highway cases, says:

"A careful examination, analysis and comparison of them as to the facts will, we think, show that, generally speaking, whatever apparent difference there may be in the conclusions reached is founded upon a distinction based upon the measure of liability resting upon a town or county charged with the duty of maintaining public highways, and that attaching to an individual or private corporation where damage results from a defect in such highways through the default of the one or the other. For illustration, it has been held that the duty of the public authorities is fully discharged when the traveled portion of the road—that part which has been graveled, turnpiked, or otherwise prepared for the purpose of customary travel—is kept and maintained in proper repair and in such shape as to admit of the usual, ordinary and customary use. And while, as between any town and the county, or public authorities having supervision of public highways, and the traveler, the latter will leave the portion of the road laid out and prepared for the

customary use and travel and go upon and use the unprepared and customarily unused part at his own risk, he is nevertheless entitled to the unobstructed and uninterrupted use of the entire width of the highway as against the unlawful acts of other persons, either natural or artificial."

The Maine court, in *Dickey* v. *Maine Telephone Co.*, 46 Me. 485, states the law thus: "But the right of travelers to use any part of a highway, if they see fit, is not restricted by the limitation of the liability of the town in case of accident. A person may go out of the beaten track at his own risk as between himself and the town, and yet be entitled to protection against the unlawful acts of other persons or corporations. Any part of the highway may be used by the traveler and in such direction as may suit his convenience or taste. (Citing *Stinson* v. *Gardiner*, 42 Me. 248, 66 Am. Dec. 281.)

"No private person has a right to place or cause any obstruction which interferes with this right on any part of the highway within its exterior limits. The extent of the liability of the town is no measure for such private person's liability. If the owner of the fee in the land, or any other person, should dig a pit, or stretch a cord, or place a pile of stones on the highway near the outer limit and at a considerable distance from the traveled way, and a traveler passing, using due care, should be injured thereby, it would be no sufficient answer to his claim for damages to aver and prove that under the circumstances the town was not liable. The duty of the town is to perform a positive act in the preparation and preservation of a sufficient traveled road. The duty of others is to abstain from doing any act by which any part of the highway would become more dangerous to the traveler than in a state of nature or than in the state in which the town has left it."

*Perkins* v. *Inhabs. of Fayette*, 68 Me. 152, 28 Am. Rep. 84; *Sutphen* v. *North Hempstead*, 80 Hun 409, 30 N. Y. S. 128; *Wilson* v. *Granby*, 47 Conn. 59, 36 Am. Rep. 51, cited and relied on by the defendant, all hold in substance that a town is not required to keep its streets passable and in order for their entire located width and length, but do not in any way sustain the contention that it is not negligence for an individual or corporation to place and permit an obstruction to remain in the public highway so long as there is ample room for the traveling public to pass.

[5] While there is some conflict in the testimony as to the exact location of the pole, there is ample evidence to warrant the finding that the end of the pole was lying just eighteen inches from the wheel track in the used portion of the road. The contention of the defendant that there is no evidence that the defendant either placed the pole in the road, or permitted it to remain where it was placed after it knew or ought to have known that it was so placed, is without merit.

J. G. Graham sold some poles to Richardson, the lineman of the Appalachian Power Company, to be used as stub poles in supporting the wood poles on its main line. Speaking of the location of the pole in question, Graham says: "This was the only place I had to put this one at the foot of the bank in the ditch right near the pole that they were going to use this stub at."

Graham also says: "The log lays just opposite the light pole."

Graham's son testified that they put the pole where they did "so it could be easily got up to the other pole up there; it was a better way to get it up there."

[6] Richardson's contract with Graham required the latter to cut and deliver the poles. Where? Necessarily at the place designated by Richardson. Richard-

son bought the poles for the company and the company ratified his contract of purchase in every detail by paying Graham for the poles, and allowing them to remain where they had been placed for several months. Richardson's duties as lineman evidently carried him past the pole after it was placed in the road. He could have explained his lack of knowledge of the location of the pole, if he had no such knowledge, but for some unknown reason the company failed to introduce him as a witness in its behalf. Under such circumstances, the presumption is that his testimony would have been against the interest of the company.

The natural and reasonable inference to be drawn from the foregoing facts is that the defendant knew or in the exercise of reasonable diligence could have known of the location of the pole in the road and knowingly permitted it to remain where it was at the time of the accident.

There was abundant evidence upon which to submit the question of the defendant's negligence to the jury, as was done in the instant case.

Was the plaintiff guilty of contributory negligence as a matter of law?

[7] The vehicle in which Wilson was driving had the usual equipment for vehicles of that kind. The harness was a good second hand harness; the use of the choke strap from the collar to the girth, to hold the collar down, made the breeching unnecessary; the traces were fastened to the singletree in the usual manner; when the tongue dropped, the harness did not give away; after the tongue struck the chestnut log, or pole, and the surrey was overturned and the mules had broken away from the vehicle; it was found that one of the straps from the breast yoke to the collar and one of the traces were broken. There is evidence that the dropping of

the tongue was due to one of the traces slipping off or being knocked off the end of the singletree by one of the mules; and that this could occur when the mules were properly hitched. The contention of the defendant is that the tongue dropped because the mules were improperly hooked to the surrey, in that the traces were too long. The fact that Wilson had driven that day down steeper hills without accident tends to negative this suggestion.

Was the dropping of the tongue due to the negligence of the plaintiff, or to a cause purely accidental, for which the plaintiff was in no way responsible? We think fairminded men would differ in their answers to this question.

[8] As said by Judge Cardwell in *Norfolk* v. *Anthony,* 117 Va. 783, 86 S. E. 68, 70: "Negligence only becomes a question of law to be taken from the jury when the facts are such that fairminded men can only draw one inference therefrom. If fairminded men, from the proof submitted, may honestly differ, as to the negligence charged, the question is not one of law, but one of fact to be determined by the jury under proper instructions from the court." Citing numerous cases.

Applying this rule to the foregoing facts, it is manifest that the plaintiff's contributory negligence was a question for the jury.

What constitutes the proximate cause of an injury is often a difficult question to answer.

[9] Proximate cause does not denote closeness in point of time, but nearness in causal relation. For negligence to constitute the proximate cause of an injury, the injury must be the natural and probable consequence of the negligence, or wrongful act, and the consequence such as ought to have been foreseen in the light of the attending circumstances.

[10] When an injury results from two combined causes, one negligent and the other nonnegligent, or purely accidental, the causes having such causal connection as to constitute an unbroken transaction, the law places the liability on the person responsible for the negligent cause and establishes the negligent cause as the proximate cause; unless the nonnegligent cause would have alone been sufficient to bring about the injury, if the negligent cause had been absent. The act or omission of the person injured, if it occurs in the exercise of ordinary care on his part, cannot be regarded as the proximate cause of the injury. Cooley on Torts, sec. 76; *Va. Ry., etc., Co.* v. *Arnold,* 121 Va. 204, 92 S. E. 925; *Richmond* v. *Gay,* 103 Va. 320, 324, 49 S. E. 482; *Clinchfield, etc., Co.* v. *Ray,* 121 Va. 329, 93 S. E. 601; White's Supp. to Shear. & Red. on Neg., Vol. VIII, section 68.

[11] If the tongue of the surrey had not fallen to the ground, it could not have struck the pole which occasioned the accident. If the pole had not been placed in the road, Wilson would probably have gotten to the foot of the hill without an accident, since the road was straight, smoother and less steep from the place of accident to the creek.

The original and continuing act of negligence was the maintenance of the log in the road. If the plaintiff's contention be true that the falling of the tongue to the ground was due to a pure accident, and not to any fault on his part, then the defendant's negligence was the proximate cause of the injury if, as we think, it was natural and reasonable to expect it would result in such an injury.

Mr. Cooley in his work on Torts, at section 76, says: "If the original act was wrongful and would naturally, according to the natural course of events, prove inju-

rious to some other person or persons, and thus actually result in injury through the intervention of other causes which are not wrongful, the injury shall be referred to the wrongful cause, passing by those which are innocent."

In *Virginia Ry., etc., Co.* v. *Arnold*, 121 Va. 204, 92 S. E. 925, the following language from Thompson on Negligence is quoted with approval: "But the general doctrine of the law of negligence is that where a cause which results in injury to a person is set in motion by another, that other will be liable to the person injured, although the intervening act or omission of such person was the immediate cause of his receiving the injury, provided the circumstances surrounding him are such that his act or omission ought not to be imputed to him as a fault, that is, where the latter act or omission occurs in the exercise of ordinary care by the person injured. That is to say, the general doctrine of the law of negligence is that the act or omission of the person injured, if it occurs in the exercise of ordinary care on the part of the latter, cannot be regarded as the proximate cause of the injury."

[12] Judge Buchanan, speaking for the court in *Richmond* v. *Gay*, 103 Va. 320, 324, 49 S. E. 482, 483, says: "The fact that the escaping gas reached Mrs. Gay's chamber, in the manner indicated in the instruction, instead of directly from the city's gas mains, does not render its negligence any the less the proximate cause of her death, unless there was some cause intervening between the defendant's negligence and her death. And in order to excuse the defendant's negligence, this intervening cause must be either a superseding or responsible cause. To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence that it alone, without

the defendant's contributing negligence thereto in the slightest degree, produces the injury. To be a responsible cause, it must be the *culpable* act of a human being who is legally responsible for his act." (Italics ours.) Citing Shear. & Redfield on Neg., section 32; *Standard Oil Co.* v. *Wakefield's Adm'r*, 102 Va. 824, 832, 47 S. E. 830, 66 L. R. A. 792.

In *Clinchfield, etc., Co.* v. *Ray*, 121 Va. 318, 329, 93 S. E. 601, 604, Judge Sims, speaking for the court, states the law thus: "It is elementary that a cause, to be a superseding cause, must entirely supersede the operation of the negligence of the defendant, so that such cause alone, without the defendant's negligence contributing in the slightest degree thereto, in fact produced the injury." Citing *City Gas Co.* v. *Webb*, 117 Va. 269, 84 S. E. 645.

"The chain of responsible connection is not broken so long as the defendant is in any proper sense the cause of plaintiff's injury, unless the person whose act intervenes is culpable. If such person's act is innocent, it is no defense." Shearman & Redfield on Neg. (6th ed.), section 36.

"It is universally agreed that if the damage is caused by the concurring force of the defendant's negligence and some other cause for which he is not responsible, including the 'act of God' or superior human force directly intervening, the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage within the definition already given. It is also agreed that if the negligence of the defendant concurs with the other causes of the injury in point of time and place, or otherwise so directly contributes to the plaintiff's damages, that it is reasonably certain the other cause alone would not have sufficed to produce it, the defendant is liable notwithstanding he may not

have anticipated or been bound to anticipate the interference or superior force which, concurring with his own negligence, produced the damage. But if the superior force would have produced the same damage, whether the defendant had been negligent or not, his negligence is not deemed the cause of the injury." Shearman & Redfield on Neg. (6th ed.), section 39.

"Where the accident would have occurred, though there had not been any negligence of a person, his negligence is not the proximate cause of the accident. But one will be held liable for an injury to another, using due care for his personal safety, where the negligence of the defendant concurs with an accident without which the injury would not have occurred." White's Supp. to Thompson on Neg., Vol. VIII, section 68.

The cases of *C. & O. Ry. Co.* v. *Paris*, 111 Va. 41, 50, 68 S. E. 398, 28 L. R. A. (N. S.) 773, and *C. & O. Ry. Co.* v. *Wills*, 111 Va. 32, 68 S. E. 395, 32 L. R. A. (N. S.) 280, cited and relied on by the defendant to sustain its contention that the proximate cause of the injury to the plaintiff was the dropping of the tongue of the surrey and not the presence of the log in the road, are not controlling in the instant case, since they were both decided on the ground that the plaintiff in each case acted voluntarily and solely upon his own responsibility. Each one was the voluntary author of his own wrong in attempting to alight from a moving train. No question of an innocent, accidental occurrence, as here, was involved in either case.

The court in the *Wills Case*, at page 35 (68 S. E. 396), says: "He acted solely upon his own responsibility in alighting from the train, and that act was the proximate cause of the injury which he received and the negligent conduct of the railroad company in causing him to enter the wrong train, conceding that it was guilty of negligence, was the remote cause."

In the *Paris Case,* at page 45 (68 S. E. 399), the court says: "The case made by the evidence, it may be conceded, shows that the railway company was negligent in failing to give Paris a reasonable time within which to leave the train.   The fact remains, however, that in attempting to alight from a moving train he was the author of his own wrong.

"Had he elected to remain upon the train, his right of action was complete for whatever inconvenience he had suffered, or might suffer, as the direct consequence of the railway company's negligence.   But, when he undertook to alight from the train, the negligence of the railway company had ceased to operate and it was the voluntary act of Paris which became the proximate cause of his injury."   Citing the *Wills Case, supra.*

The defendant cites and relies on *Watts* v. *Southern Bell, etc., Co.,* 100 Va. 46, 40 S. E. 107.   An examination of this case satisfies us that on the subject of proximate and concurrent causes, it is in harmony with the authorities we have cited and quoted, *supra.*   It appears that the plaintiff was driving along the road on a dark night, when his buggy ran against a telegraph pole which the company had illegally planted near the center of the road.   The plaintiff's horse was frightened by the collision and ran away, causing the vehicle to collide with another of the company's poles planted outside of the highway.   The court held, in substance, that nearness in point of time did not necessarily determine the question of proximate cause; but that the damages being the result of two combined causes, the first being illegal and the other legal, the first pole was the proximate cause of the accident.

The *Arnold Case,* the *Ray Case* and the *Gay Case, supra,* were decided after the *Watts Case.*   If there be any conflict between the *Watts Case* and these later cases, the latter should prevail.

The defendant also cites and relies on a number of cases from other jurisdictions, several of which involved the liability of a municipality or township, which, in some respects, as we have seen, differs from that of an individual.

The case most strongly relied on is *Schaeffer* v. *Jackson, Township*, 150 Pa. 145, 24 A. 629, 18 L. R. A. 100, 30 Am. St. Rep. 794. The later cases, decided by the Pennsylvania court, show that the law in that State is contrary to the defendant's contention as to the holding in the *Schaeffer Case*. In *Yoders* v. *Amwell*, 172 Pa. 447, 33 A. 1017, 51 Am. St. Rep. 750, a township's case, decided several years after the *Schaeffer Case*, the plaintiff's horse took fright and backed the plaintiff's buggy off a bridge. The holding was that the negligence of the township in failing to properly guard the bridge by a railing was the proximate cause of the accident. The plaintiff in error in that case relied on the *Schaeffer Case*. The court, stating that the *Schaeffer Case* was decided on its own peculiar facts, and was not in point, proceeded as follows: "The plaintiff, when injured, was in the ordinary use of the highway. While so using it, she dropped her hat as the horse stepped on the bridge; Watson, exercising care, did not stop on the dangerous structure, but fourteen feet beyond, and then returned to pick up the hat; then the horse took fright, backed but a few steps and off the bridge; this was but an incident to the ordinary use of the highway; it was not maintained for horses only that never took fright; an ordinary horse might take fright as he approached the bridge, run on and plunge off of it; he might frighten at fluttering birds in briers on the rocks, or at the noise of the waterfall, as alleged here, for these objects were continually present at that place, and subsequently, after he had crossed the bridge, might back on and off it."

The court also states that the earlier Pennsylvania cases of *Chartiers Township* v. *Phillips*, 122 Pa. 601, 16 A. 26, and *Herr* v. *City of Lebanon*, 149 Pa. 222, 24 A. 207, 16 L. R. A. 106, 34 Am. St. Rep. 603, cited in the *Schaeffer Case*, are not in point.

In *Bitting* v. *Maxatawny*, 177 Pa. 213, 35 A. 715, decided after the *Schaeffer Case*, the court says: "The mistake made in the argument is in treating the unexpected movement of the horse when affrightened as something that defendant ought not to be answerable for; but the fright could be foreseen; and that a horse acting under fright would jump to one side, back, turn short around, or run away, was also foreseeable; and that is really foreseen by those having charge of the public highways."

The Massachusetts rule is laid down in *Hinckley* v. *Somerset*, 145 Mass. 326, 14 N. E. 166, where the following charge to the jury in the lower court was approved: "It makes no difference whether the accident was occasioned by the horse being frightened by an object either inside or outside the highway * * *. When the horse shies and comes upon something which is claimed to be a defect, and which it is claimed the vehicle would not have come in contact with except for the want of a suitable railing, then the question for the jury is this: Can we say that if there had been a suitable railing there the control of the horse would have been regained by his driver, and the accident and injury would not have happened? If the plaintiff makes it appear by a fair preponderance of all the evidence that that was the state of things, then he can recover. If he fails to show that, then he cannot recover."

The rule in New York is found in *Ring* v. *City of Cohoes*, 77 N. Y. 83, 33 Am. Rep. 574. A blind horse became frightened, ran away, got beyond control and

struck a hydrant in the street. The court says: "When, without any fault of the driver, a horse becomes uncontrollable or runs away, it is regarded as an accidental occurrence for which the driver is not responsible. When two causes combine to produce an injury to a driver upon a highway, both of which are in their nature proximate, the one being a culpable defect in the highway, the other some occurrence for which neither party is responsible, the municipality is liable, provided the injury would not have been sustained but for such defect. This appears to us to be the reasonable rule. It exacts no duty from municipalities which has not always rested upon them. They must use proper care and vigilance to keep the streets and highways in a reasonably safe and convenient condition for travelers. This is an absolute duty they owe all travelers, and when the duty is not discharged, and in consequence thereof, the traveler is injured without fault on his part, they incur liability. They are not bound to furnish roads upon which it will be safe for horses to run away, but they are bound to furnish reasonably safe roads; and if they do not and a traveler is injured by culpable defects in the road, it is no defense that his horse was at the time running away or was beyond control."

In *Birsch* v. *Citizens Electric Co.*, 56 Mont. 574, 93 Pac. 940, the Montana court, discussing the proximate cause, says: "We think it may be said to be the general rule sustained by the great weight of authority, that where the primary cause of an injury is a pure accident occasioned without fault of the injured party, and the negligent act of the defendant is a cooperating or culminating cause of the injury, or if the accident would not have resulted in the injury except for the negligent act, the negligence is the proximate cause of the injury, for which damages may be recovered." Citing *Goe* v.

*Northern Pac. Ry. Co.*, 30 Wash. 654, 71 Pac. 182; *Meisner* v. *City of Dillon*, 29 Mont. 116, 74 Pac. 130, and quoting from the last named case as follows: "Where two causes contribute to an injury, one of which is directly traceable to defendant's negligence, and for the other of which neither party is responsible, the defendant will be held liable provided the injury would not have been sustained but for such negligence."

In *Fentiman* v. *Atchison, etc., R. Co.*, 44 Tex. Civ. App. 455, 98 S. W. 939, the Texas court speaks thus: "It is well settled that if the negligence of one person with reference to the duty he owes to another concurs with an accidental cause, resulting in injury to whom such duty is owed, the negligent person must answer for the consequences, as though his negligence were the sole cause of the loss."

The Supreme Court of Indiana, in the case of *Louisville, etc., Ry. Co.* v. *Haynes*, 47 Ind. App. 507, 91 N. E. 962, says: "If the injury of appellee was the result of the negligence of the railway company, and an accident for which neither the railway company nor the plaintiff was liable, the railway company would still be liable unless the injury would not have happened had it not been negligent. * * * In determining the proximate cause, the jury is directed to the responsible cause without reference to whether it is the first or last in the succession of events that resulted in plaintiff's injury." Citing Thompson on Negligence, sections 68, 70.

The rule in Illinois is succinctly stated in *Illinois Central R. Co.* v. *Siler*, 229 Ill. 390, 82 N. E. 362, 15 L. R. A. (N. S.) 819, 11 Ann. Cas. 368, as follows: "The law is well settled in this State that a defendant is liable for an injury caused to one using due care for his personal safety by the defendant's negligence concurring with an accident without which the injury would not have occurred." Citing several Illinois cases.

We find nothing in the other cases cited by the defendant which makes it necessary for us to review them here. So far as they are in conflict with the views herein expressed we cannot follow them.

The court gave the jury ten instructions, as follows:

"No. 1. The court instructs the jury that a public highway is for the use of the public, for the purposes of travel, and, in order to serve these purposes, must be kept free from obstructions which reasonably constitute a menace to travelers, taking into consideration the ordinary incidents and accidents of travel; and if you shall believe from the evidence that the defendant permitted the log or pole to remain on the Lead Mine road for three months in such a position that it might reasonably have resulted in injury to the plaintiff traveling in a buggy along said road, though the vehicle was out of control of the plaintiff, because of an accident to his harness or buggy, for which the plaintiff was not negligently responsible, the defendant is liable, if you shall further believe by a preponderance of the evidence and from a consideration of all the circumstances of the case that the injuries would not have been sustained by the plaintiff, but for the presence of the log or pole on the road.

"No. 2. You are further instructed that if you believe from the evidence, without negligence on the part of J. H. Wilson, the tongue of the buggy which he was driving fell from the breast yoke, that is an accidental occurrence for which he is not responsible and, if after this occurrence, you shall believe from the evidence J. H. Wilson did all he could reasonably do to keep his team and buggy in the road, and prevent said striking of said pole, and you shall further believe from the evidence that the dropping of the buggy tongue and the presence of the log in the road were two causes which

combined to produce the accident and injuries complained of; and further believe from the evidence that the defendant was negligent in permitting said log to remain in the road; the defendant is liable to the plaintiff for such damages as you may believe from all the evidence he has sustained consequent upon such injuries, provided you shall believe from all the evidence in the case that the injuries would not have been sustained but for the presence of the log in the road, even though you shall at the same time believe from the evidence that the accident and injuries complained of would not have occurred or been sustained but for the dropping of the buggy tongue from the breast yoke.

"No. 3. You are further instructed that while it is true that if the dropping of the tongue out of the breast yoke was due to the neglect or default of the plaintiff, he could not recover damages, yet, the burden is on the defendant to show such negligence on the part of the plaintiff, unless such negligence appears from the plaintiff's own evidence, and if you shall believe that negligence of the plaintiff in this respect has not been shown, or does not appear from his own evidence, you should find for the plaintiff, if you shall believe that the accident in which the plaintiff suffered the injuries complained of would not, according to the preponderance of the evidence in this case, have happened if the said log or pole had not been in the road.

"No. 4. In considering the question of whether or not the defendant in permitting the log to remain in the road, should have foreseen that an accident might thereby be caused to wheel vehicles traveling the road, you should take into consideration all the facts and circumstances shown in the evidence, bearing in mind that the precise nature of the accident or the particular consequences thereof need not be foreseeable by the de-

fendant in order to constitute the act of defendant in permitting said log to remain in the road an act of negligence responsible for the accident and injuries complained of.

"No. 5. The court instructs the jury that if you shall believe under all the proof in this case that the accident in which J. H. Wilson suffered the injuries complained of by him would not have happened and that said injuries would not have been received, as they were received by him in this case, but for the presence in the road of the pole or log referred to in the evidence; that said pole or log was, at the time of the accident, the property of the defendant or under control of the dedendant; that the defendant knew, or in the exercise of reasonable care could have known, of the location of said log or pole prior to the accident in ample time to have removed it from the road; and that the defendant permitted the said log or pole to remain on said public road, either in the used portion of said road, or so near to such used portion as to constitute an obstruction to travel for buggies, and in such a position that an accident to a traveler in a buggy might be a reasonable consequence; you shall find for the plaintiff and assess his damages, according to the method laid down for your guidance in instruction Number 6, in such an amount as may seem to you just and fair, not, however, exceeding the sum of $15,000.00.

"No. 6. The court instructs the jury that if, under all the evidence and instructions of the court, you should find for the plaintiff, you should allow him such sum as you believe from the evidence will compensate him reasonably for the injuries received; and in estimating his damages may take into consideration the mental and physical pain and suffering, if any, consequent upon the injuries; the reasonable value of the

time already lost, if any, consequent upon the injuries, and, if you believe from the evidence that said injuries are permanent and will wholly or partially disable him to labor and earn money in the future; you may, in addition to the above, find such sum as will, if paid now, be a fair compensation for his diminished capacity to labor and earn wages or earn money by his labor in the future; and, in this connection, you may take into consideration the age and physical condition of the plaintiff and the probable duration of his life at the time of the injury, under all the proof in the case, not to exceed $15,000.00.

"No. 7. The court instructs the jury that he who undertakes to hold another liable in damages oñ the ground of negligence must himself be free from any negligence contributing to the injury of which he complains.

"And if the jury believe from the evidence that the plaintiff was guilty of any negligence, however slight, which contributed to the happening of the accident from which his injuries resulted, they must find for the defendant.

"No. 8. The court instructs the jury that it is the duty of a traveler upon the highway in a vehicle to use due care to provide himself with a reasonably safe team, vehicle and harness, and to use due care in the management of the same, and if they believe from the evidence that the plaintiff was negligent in either of these respects, then they must find for the defendant.

"No. 9. The court instructs the jury that there can be no recovery of damages for an alleged injury unless the negligence charged as causing such injury was the proximate cause of such injury; that in order to warrant a finding by the jury that negligence was the proximate cause of the injury, it must appear that the injury complained of was the natural and probable conse-

quence of the alleged negligence, and that it ought to have been foreseen in the light of attending circumstances.

"No. 10. The court instructs the jury that although they may believe from the evidence that the dropping of the tongue of the surrey was a mere accident, yet, if they further believe from the evidence that the tongue after it dropped broke, and after breaking of the tongue that the end thereof dragged or was pushed down the road and came in contact with the end of the stub pole in question and overturned the buggy and caused the injury, yet the defendant is not liable if the jury should further believe from the evidence that said buggy would have overturned by the end of the buggy pole coming in contact with rock or any other inequality in the road."

Instructions numbered 1 to 6, inclusive, were given on motion of the plaintiff, and those numbered 7 to 10, inclusive, were given on motion of the defendant.

[13] The court refused to give, on motion of the defendant, instructions numbered from 11 to 21, inclusive. We think it unnecessary to quote these instructions here, since we are of the opinion that the instructions granted sufficiently instructed the jury upon the law of the case. In this situation, even though the instructions refused correctly stated the law, it was not reversible error for the court to refuse to give them.

[14] The defendant's negligence, the contributory negligence of the plaintiff, and the proximate cause of the injury were fairly submitted to the jury under proper instructions, and the action of the jury in deciding all these questions against the defendant is conclusive here.

We find no reversible error, and the judgment will be affirmed.

*Affirmed.*

BURKS, J., dissenting.